[Civ. No. 6161.   First Appellate District, Division Two.—May 10, 1928.]

HYMAN KUSHNER, Appellant, v. THE HOME SERVICE COMPANY (a Corporation), Respondent.

Murphy & Cohen for Appellant.

Ingall W. Bull and Harold Larson for Respondent.

THE COURT.—The following opinion was written by Burroughs, justice *pro tempore*, and is adopted as the opinion of the court:

This is an action for damages claimed to have been suffered by plaintiff by reason of the alleged violation of an implied covenant of a lease for quiet enjoyment.

The court found against the allegations of the complaint and denied plaintiff any relief.

It appears from the evidence that the defendant was the owner of a lease of the store property at 601½ South Grand Avenue, in the city of Los Angeles. The lease provided that it was subject to cancellation upon five months' notice to the lessee in the event the owner desired to erect a new building on said property. During the term of said lease the defendant sublet a portion of said premises to one S. Yamanobe for the term commencing July 1, 1921, and ending December 31, 1925. The sublease contained no reference to the bulding clause above referred to. An officer of the defendant company and the sublessee Yamanobe testified

that the latter knew of the building clause and took the lease with full knowledge and understanding that said lease could be terminated by the owner of the property as provided in the defendant's lease. May 10, 1922, the said Yamanobe, by an instrument in writing, and with the consent of the defendant, assigned said lease to this plaintiff for the remainder of the term and the plaintiff entered into possession of the premises under and by virtue thereof. On or about January 10, 1924, the lessor of the defendant served on defendant a notice that the latter's lease would terminate on the thirtieth day of June, 1924. Said notice gave as a reason for the cancellation "the landlord of the undersigned desires the premises for the purpose of erecting a new building." On or about April 15, 1924, defendant served notice on plaintiff that the plaintiff's lease would terminate on the thirtieth day of June, 1924, and gave as a reason for the termination of the leases "the owner's desire to erect a new building on the present ground."

The above facts are established without conflict.

S. Yamanobe testified that before assigning the lease to plaintiff he told him that the lease would be terminated whenever the owner wanted to tear down the building. He also testified that the negotiations for the sale and assignment of the lease to plaintiff were carried on over a period of several days and that the last time the plaintiff came to see him he brought with him another man, and during the conversation one of them said: "Well, better you sell out, because any time it be torn down." The witness further testified that plaintiff asked how long a lease he had and he replied four years, but it would expire any time when the building would be torn down.

Mr. Scott, agent of defendant corporation, testified that the plaintiff and Yamanobe came to his office asking permission to assign the lease and told him the new occupancy would be for a key and lock store, and he told them it would be agreeable to the defendant company, provided it would be satisfactory to the owners, and that he would find out and notify them. Thereafter he obtained such permission and notified the plaintiff and said Yamanobe. Thereafter the witness had many talks with the plaintiff and about November, 1923, the plaintiff told him of rumors in

the neighborhood that the building was going to be torn down and asked if he would have to get out. "I told him we had received no notice whatever, not to worry until we did."

After notice had been given him we had another conversation and discussed another location. "I told him, we will take you right along with us wherever we go, and he seemed perfectly agreeable."

Mr. Scott further testified that he later located a room in the six hundred block on Sixth Street, between Grand and Hope Streets, and that he told the plaintiff, "I could get him a space with us there, and went so far as to tell him I could save him money on it. I told him we could get him a space in there for $50, the space he would need, and whether or not he said yes or no I can't testify to, but the inference was that yes, we will do what we can and I says, 'You leave it to me and we will get something for you.' "

The witness further testified that after the foregoing conversation he took the matter up with the agent for the building on Sixth Street and then saw the plaintiff again and "he said at that time that he had been advised not to go with us, that he had a good air-tight lease where he was, to stay right there. Then I went and made another deal for just a small laundry space and they divided the room and gave us the use."

This witness also told plaintiff that his rent in the new quarters would be $50 instead of $75 per month, as in the old quarters.

The evidence further discloses that at the signing of the lease between the defendant and Yamanobe the rent for the last month was paid. That plaintiff, upon the assignment of the lease, paid Yamanobe the $75 above referred to and that payment was credited by the defendant to the plaintiff for the June, 1925, rent. Plaintiff tendered to defendant $75 for the rent of June, 1925, but his check therefor was returned to him. The plaintiff continued to occupy the premises until August, 1925, when the landlord, in tearing down the old building, took out the windows.

As against this testimony the plaintiff denied that he had any knowledge of the building clause in the defendant's lease. Denied he had any knowledge that his sublease could

be terminated until he received notice that it was terminated by reason of the owner's desire to build. Denied that he had ever been informed by Yamanobe that the lease would expire if the owner desired to tear down the building.

The court found that at the time of entering into said lease with plaintiff's assignor, said plaintff's assignor well knew that the defendant was leasing said premises under a lease which provided that said lease would be subject to cancellation upon five months' notice to the defendant in the event the owner of said property desired to construct a building thereon, and said plaintiff's assignor at said time agreed to said provision and to the cancellation of his lease in the event the defendant's lease thereon was canceled by said owners. The court further found that at the time of the assignment of the lease to plaintiff of plaintiff's assignor, S. Yamanobe's interest in and to said lease, that plaintiff was fully informed of the provision in the defendant's lease for the cancellation thereof, and also of his assignor's consent to the cancellation as provided in the last-named lease, and that plaintiff accepted said assignment subject thereto. The court further found that plaintiff had waived any benefit he might have been entitled to under section 1927 of the Civil Code.

Under the title "Grounds Urged for Reversal," the appellant says:

"1. Admitting for argument's sake that the plaintiff was chargeable with constructive notice of the over-lease, that it might be cancelled on six months' notice, his rights were not concluded, and he was entitled to damages from his immediate lessor.

"2. Appellant did not waive the benefit of section 1927 of the Civil Code.

"3. The findings, almost in their entirety, are contrary to the evidence.

"4. The trial court erred in overruling objections to questions calling for hearsay evidence."

We will first consider the objection that the court erred in holding that appellant had waived the benefit of the implied covenant of quiet enjoyment, under the provisions of section 1927 of the Civil Code. Said section provides: "An agreement to let upon hire binds the letter to secure to the

hirer the quiet possession of the thing hired during the term of the hiring, against all persons lawfully claiming the same.''

■ There can be no question under the above section that the lease assigned to the plaintiff carried with it, even in the absence of a special covenant for quiet enjoyment, an implied one binding upon the defendant. (*Pedro* v. *Potter*, 197 Cal. 751 [42 A..L. R. 1165, 242 Pac. 926]; *Baranov* v. *Scudder*, 177 Cal. 458 [170 Pac. 1122].) The foregoing section of the code must, however, be read and construed in conjunction with section 3268 of the Civil Code, which provides: ''Except where it is otherwise declared, the provisions of the foregoing fifteen titles of this part, in respect to the rights and obligations of parties to contracts, are subordinate to the intention of the parties, when ascertained in the manner prescribed by the chapter on the interpretation of contracts; and the benefit thereof may be waived by any party entitled thereto, unless such waiver would be against public policy.'' Chapter one of Title V, of which section 1927, *supra*, forms a part, is embraced within the 15 titles designated in said section 3268 of the Civil Code.

■ Viewing the instant case in the light of the foregoing section of the code, the court found that plaintiff waived the benefit of section 1927 of the Civil Code, the evidence in support of this finding, although not without conflict, is substantially as follows: The lease held by the defendant contained a provision for cancellation in case the owner desired to tear down the old building and erect a new one. This clause was not contained in the sublease which the defendant gave to the plaintiff's assignor, but said assignor was fully informed of this provision and entered into possession with the agreement and understanding that his sublease terminated whenever the owner desired to enforce the building clause. When the sublessee was negotiating with the plaintiff for a sale of the sublease the plaintiff was informed of the building clause, and that his lease would terminate whenever the owner wanted to build. With this knowledge and agreement, the plaintiff took the assignment of the lease. That by taking the assignment with such knowledge he intended to waive the implied covenant for quiet enjoyment, would appear to be the only logical construction that could be placed upon such conduct.

It is claimed by appellant that under the title relating to the interpretation of contracts referred to in section 3268 of the Civil Code, parol evidence was not admissible as it varied the terms of the written lease, and he cites in support of this claim sections 1637, 1638 and 1639 of the Civil Code. But in the case at bar the evidence was received, not for the purpose of varying the terms of the written contract, but solely upon the question as to a waiver by the plaintiff of the implied covenant for quiet enjoyment. In 27 Ruling Case Law, section 7, page 912, it is held that waiver is a queston of fact and the sufficiency of the evidence relating thereto is for the jury. Again, in the same volume, section 6, page 910, it is said, "waiver must be clearly proved, but this may be effected by various species of evidence. Thus it may be proved by express declaration or agreement, or by acts and conduct manifesting an intent and purpose not to claim the supposed advantage . . . "

*California S. H. Co.* v. *Callendar,* 94 Cal. 120 [28 Am. St. Rep. 99, 29 Pac. 859], was an action upon a stock subscription. The defense was interposed that the conditions of the stock agreement had not been complied with, and it was held that this defense had been waived by the conduct of the defendant. The supreme court says: "The waiver may be express, or it may be by implication from the acts and declarations of the subscriber."

Appellant relies upon the case of *Baranov* v. *Scudder,* *supra,* but as we read that case it differs in many material aspects from the case at bar. In the Baranov case, Scudder was a tenant of certain real property under a lease from the Western Union Telegraph Company. The lease contained a provision against subletting and a forfeiture of the lease for a violation of said provision. In violation of that provision Scudder sublet the premises to the respondent Baranov. The Western Union Telegraph Company exercised its option and evicted Baranov because of this breach of the lease. Baranov then commenced this action against Scudder and obtained judgment for damage suffered by reason of his eviction by the telegraph company. In upholding the decision of the trial court, the supreme court held that it appeared without conflict that Baranov knew that Scudder was a lessee merely, and knowing that fact he took with

notice of the contents of the overlease as to the forfeiture clause. But notwithstanding such knowledge, he had a right to assume that his immediate lessor had or would make such arrangements as would protect him in the quiet enjoyment of his term, and that in the absence of such an arrangement, the sublessee had an action for any damage suffered by reason of an evction. However, in the instant case the plaintiff was informed that the lease would expire whenever the overlord wanted to tear down the old building and erect the new one. Plaintiff knew from this that no arrangement for an extension of the term had been or would be made. He entered into the assignment with full knowledge of this fact, and either by himself or a party present during the negotiations with Yamanobe, that fact was used in argument to Yamanobe as a reason why he should assign for a lesser figure. We are satisfied that the plaintiff waived the implied provision for quiet enjoyment and the judgment of the trial court upon this question was correct.

Under the third assignment of error it is contended that the findings of the trial court are nearly all contrary to the evidence. From the foregoing review of the evidence upon the subject of waiver, it is apparent that the findings thereon are amply supported by the evidence.

The court also found that the plaintiff had not been evicted from the premises. Also that he had not been damaged by reason of any act or acts of the defendant. Having reached the conclusion that the plaintiff had waived the benefit of the implied covenant for quiet enjoyment, the findings on the question of eviction and damage become immaterial and no useful purpose would be served by an examination of the evidence upon those issues.

In *Smith* v. *Smith*, 173 Cal. 725 [161 Pac. 495], it is held that a judgment will not be reversed on appeal because of failure to make findings which would not necessitate a different judgment even if they were made and entered in the appellant's favor.

In *Dalton* v. *Pacific Electric Ry. Co.*, 7 Cal. App. 510 [94 Pac. 868], it is held that if the findings as made support the judgment, it is immaterial whether other material findings are or are not supported by the evidence, as it could not affect the result. To the same effect are *Brison* v.

*Brison*, 90 Cal. 323 [27 Pac. 186]; *Coyle* v. *Lamb*, 123 Cal. 264 [55 Pac. 901].

The final alleged error is that the court erred in overruling appellant's objection to the following question propounded to the appellant's assignor: "Q. Now at that time, did you know the conditions of the lease, the Home Service Company had with the owners? Mr. Cohen: Object to that as incompetent, irrelevant and immaterial, and varying the terms of a written lease now in evidence. The Court: Overruled." An examination of the transcript reveals that the question was not answered. However, later in his examination, the plaintiff's assignor testified without objection that he knew respondent's lease would be terminated whenever the owner desired to build a new building. This evidence, when considered in connection with the later testimony of said assignor, shows that this knowledge was communicated to the plaintiff before the latter accepted the assignment of the lease, and was material as bearing upon the conduct of plaintiff on the question of waiver of the implied covenant of his lease.

There are no other questions presented by appellant, and as none of those already considered requires a reversal of the judgment, it is ordered that said judgment be and it is hereby affirmed.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 9, 1928.

All the Justices present concurred.