[No. C014663. Third Dist. Aug. 23, 1994.]

PHILLIP M. LEE et al., Plaintiffs and Respondents, v.
PLACER TITLE COMPANY, Defendant and Appellant.

504

COUNSEL

Friedman, Collard & Owen, Friedman & Collard, Peter J. Stubbs and Michael B. Bigelow for Defendant and Appellant.

Trainor, Robertson, Smits & Wade, Nancy Hotchkiss, David E. Frank, Eisen & Johnston, Jay-Allen Eisen, Marian M. Johnston, Karen Leaf and Ann Perrin Farina for Plaintiffs and Respondents.

OPINION

SPARKS, J.—Defendant Placer Title Company leased space in a shopping center owned by plaintiffs Phillip and Judy Lee. Defendant stopped paying rent and vacated the premises, claiming fumes from an adjoining dry cleaning business made its office unusable. Plaintiffs filed a complaint for rent owing on the remainder of the lease. When the court ruled the terms of the lease precluded defendant from asserting a defense based on a constructive eviction theory, the parties entered into a stipulated agreement, allowing judgment to be entered in favor of plaintiffs and permitting defendant to appeal the court's ruling on the constructive eviction defense.

Judgment was entered accordingly on August 10, 1992, and defendant now appeals, asserting: (1) the court lacked jurisdiction to enter this judgment because the case had been dismissed one month earlier, on July 9, 1992; and (2) the court erred in ruling the terms of the parties' lease

precluded a defense based on constructive eviction. Because neither contention has merit, we shall affirm.

### Factual and Procedural Background

In December 1983, plaintiffs entered into a five-year lease with Walker and Lee Real Estate (Walker) for office space in plaintiffs' shopping center. In 1987, Walker assigned the lease to defendant, who opened an escrow office in the center. In 1989, the lease was extended for an additional five-year period.

In June 1990, while this lease was in effect, defendant stopped paying rent, vacated the premises and moved its offices to another location. Plaintiffs filed a complaint for rent, asserting defendant was liable for more than $120,000 in damages and rent for the remainder of the lease period. In its answer, defendant asserted the defense of constructive eviction, claiming "plaintiffs permitted the tenants of adjoining premises [a dry cleaning business] to operate a business on such adjoining premises in such a manner as to permit dangerous and noxious chemical odors to penetrate into the premises leased by defendant . . . , thereby endangering the health of [its] employees[.]"

Defendant also filed a cross-complaint for constructive eviction, alleging plaintiffs failed to rectify the problems created by fumes from the adjoining dry cleaners, forcing it to vacate the premises. Defendant sought to recover for lost business income, moving expenses, employee medical expenses, and punitive damages. Defendant apparently settled this matter with plaintiffs' insurer, and the cross-complaint was dismissed with prejudice.

Before trial, plaintiffs moved to exclude any evidence relating to a constructive eviction theory. They asserted paragraph 24 of the parties' lease precluded such a defense. That lease section, entitled "Default by Landlord," provided: "Landlord shall not be in default unless Landlord fails to perform obligations required of Landlord within a reasonable time, but in no event later than thirty (30) days after written notice by Tenant to Landlord; . . . provided, however, that if the nature of Landlord's obligation is such that more than thirty (30) days are required for performance then Landlord shall not be in default if Landlord commences performance within such thirty (30) day period and thereafter diligently prosecutes the same to completion. *In no event shall Tenant have the right to terminate this Lease as a result of*

*Landlord's default and Tenant's remedies shall be limited to damages and/or an injunction.*"[1] (Italics added.)

The trial court concluded this paragraph precluded defendant from raising a defense of constructive eviction to plaintiffs' complaint for rent. As expressed by the trial judge, "defendant vacated the premises on June 15, 1990, did not pay rent, set up shop elsewhere, and refused to comply with any term further to comply with any terms of the lease. [¶] That is a termination of the lease. I refer to Civil Code section 1951.2. [¶] Further, whether the alleged constructive eviction is labeled a defense or a remedy is unimportant, because termination of the lease is not permitted. That right was contracted away by the defendant by paragraph 24 of the lease." (Capitalization omitted.) Recognizing this ruling effectively nullified the only defense it had to plaintiffs' claim, defendant entered into a stipulated agreement with plaintiffs on the same day, April 21, 1992. Pursuant to this agreement, judgment was to be entered in favor of plaintiffs for $138,101.61 plus costs and attorney fees according to a cost bill to be filed by plaintiffs. Defendant preserved its right to appeal the court's ruling on the constructive eviction issue, but not the principal amount of the judgment. The parties agreed judgment would be entered after the approval of the cost bill, and defendant would appeal from that judgment.

Despite the understanding of the parties, the clerk of the court sent a "Notice to File Dismissal and/or Order to Show Cause" to the parties on May 18, 1992. This notice stated: "The Court, having been advised of the settlement of this matter, directs the plaintiff . . . to file a dismissal . . . within forty-five (45) days of the date of this notice. [¶] *If a Dismissal . . . is not filed within the time set forth above, ALL COUNSEL OF RECORD ARE HEREBY ORDERED to show cause before this Court on 07/09/92 at 08:30am, . . . why the action should not be dismissed pursuant to Rule 225, California Rules of Court.* . . . Failure to comply with this notice may result in the imposition of monetary sanctions and/or dismissal of the case." (Italics in original.)[2] (This notice is hereafter referred to as the rule 225 notice.)

The clerk of the court mailed this rule 225 notice to the parties, but sent the notice to plaintiffs at an incorrect address. Plaintiffs apparently never received the notice.

One week later, on May 26, plaintiffs submitted a memorandum of costs, including attorney fees. Defendant's motion to tax costs was denied, and on

---

[1]Plaintiff also asserted the dismissal of defendant's cross-complaint for constructive eviction constituted a retraxit, precluding defendant from raising that defense here.

[2]California Rules of Court, rule 225(b), provides: "[P]laintiff shall file a request for dismissal within 45 days after the date of settlement. If plaintiff does not file the request for dismissal, the court shall dismiss the case 45 days after it receives notice of settlement unless good cause is shown why the case should not be dismissed."

August 3, plaintiffs submitted a proposed judgment to the court. This judgment, filed August 10, 1992, awarded plaintiffs a total of $210,952.47.[3]

However, one month earlier, on July 9, 1992, the court held a hearing on the rule 225 notice it had previously sent to plaintiffs. Because plaintiffs had not received the notice, they were not present at the hearing. For unknown reasons, defendant was also absent. The court dismissed plaintiffs' complaint pursuant to rule 225 of the California Rules of Court. Copies of the minute order and judgment of dismissal were mailed to plaintiffs, again at the wrong address.

Notice was, however, properly mailed to defendant. Despite the dismissal, defendant chose to challenge the August 10 judgment by filing a motion for new trial. The court denied the motion, ruling the stipulated judgment had not reserved the right to make such a motion. Defendant then filed this appeal from the August 10 judgment.

## DISCUSSION

### I. *Effect of July 9 Dismissal*

In a claim raised for the first time on appeal, defendant asserts the court lacked jurisdiction to enter a judgment on August 10 because the case had previously been dismissed on July 9. Plaintiffs counter that the July 9 dismissal is void, because there was no proper service of either the rule 225 notice or the ensuing judgment of dismissal.[4] We conclude plaintiffs have the better argument.

Code of Civil Procedure section 1012 authorizes service by mail. (All subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated.) In setting forth the requirements for such service, section 1013, subdivision (a), provides that the notice must be mailed "in a sealed envelope, with postage paid, addressed to the person on whom it is to be served, *at the office address as last given by that person on any document filed in the cause* and served on the party making service by mail; . . ." (Italics added.) This subdivision applies to mailings by the court clerk. (*Triumph Precision Products, Inc.* v. *Insurance Co. of North America* (1979) 91 Cal.App.3d 362, 365 [154 Cal.Rptr. 120].)

---

[3] This judgment reflected the agreed-upon amount of $138,101.61 in damages, attorney fees of $69,195 and costs of $3,655.86. The judgment also awarded plaintiffs postjudgment interest at 10 percent from April 21, 1992, the date of the stipulated agreement.

[4] Plaintiffs offer a variety of alternative arguments attacking the validity of the dismissal. In addition to asserting the service of the rule 225 notice was improper, they challenge the timeliness of defendant's claim and argue the court lacked the power to dismiss the case given the parties' stipulated agreement. Because we conclude service of the rule 225 notice was ineffective, we have no need to resolve these other issues.

Successful service by mail requires strict compliance with all statutory requirements, including those set forth in section 1013; the failure to comply deprives a court of jurisdiction to act. (*Sharp* v. *Union Pacific R.R. Co.* (1992) 8 Cal.App.4th 357, 360 [9 Cal.Rptr.2d 925]; *Dobrick* v. *Hathaway* (1984) 160 Cal.App.3d 913, 921 [207 Cal.Rptr. 50]; *Triumph Precision Products, Inc.* v. *Insurance Co. of North America, supra,* 91 Cal.App.3d at p. 365; *Valley Vista Land Co.* v. *Nipomo Water & Sewer Co.* (1967) 255 Cal.App.2d 172, 174 [63 Cal.Rptr. 78].)

In the present case, plaintiffs filed a notice of change of address on January 25, 1991, informing the court that their attorneys had moved from 601 University Avenue in Sacramento to new offices at 701 University. Thereafter, the clerk of the court sent notices to plaintiffs at their new address. The trial briefs and motions *in limine,* filed by plaintiffs in April 1992, all bore a caption indicating the address of "701 University." These were the last documents filed by plaintiffs before the clerk mailed the rule 225 notice.

For unexplained reasons, on May 18, 1992, the clerk of the court sent the rule 225 notice to plaintiffs at their attorneys' old address, 601 University Avenue, an address that had been vacated some 16 months earlier. Plaintiffs apparently did not receive this notice. Subsequent filings by plaintiffs in May and July 1992, relating to costs for the stipulated agreement, all indicated the 701 University address. On July 9, 1992, the court nonetheless mailed its order and judgment of dismissal to plaintiffs at the old address. This last mailing was returned to the court with the notation " '. . . Undeliverable as Addressed - Forwarding Order Expired.' "

Defendant asserts the dismissal was effective even though it was mailed to the wrong address because under postal regulations, the rule 225 notice must have been forwarded to plaintiffs' new mailing address. Defendant asks that we take judicial notice of these regulations. Plaintiffs do not object to this request, but ask that we take judicial notice of additional postal regulations. We grant both requests.

Postal regulation No. F020.1.1 provides that "[r]ecords of permanent change-of-address orders are kept by post offices for 18 months, for forwarding and for address-correction purposes, from the end of the month when the change takes effect." Defendant asserts this regulation means that plaintiffs' mail would have been forwarded to them from January 1991, when the change of address was filed, through June 1992, and thus the May 1992 mailing must have been sent on to plaintiffs, because the court file does not indicate it was returned to the sender.

Plaintiffs contend the rule 225 notice could not be forwarded under postal regulations. They cite postal regulation No. 391, which provides: "All

First-Class Mail, including Priority Mail, and postal cards and postcards, *is forwarded at no charge for a period of 1 year* when the new address is known. *During months 13 through 18, pieces are returned to the sender with an on-piece address correction at no charge.*" (Italics added.) Thus, plaintiffs argue, any notice sent to their old address in May 1992 would have been returned to superior court with a notation indicating the proper address.

We agree with plaintiffs. The regulations do not support defendant's claim that the rule 225 notice, under the postal regulations, would have been forwarded to plaintiffs. At the time of the mailing and under the governing postal regulations, the notice would not have been forwarded to plaintiffs' new address. Accordingly, it was incumbent upon defendant to establish that the requisite notice had been sent to the correct address. Since the notice was not sent to the "office address as last given by that person on any document filed in the cause," as required by section 1013, subdivision (a), the notice was not effective. The dismissal subsequently entered was therefore void.

Defendant seeks to avoid this result by offering two alternative theories. First, it claims no notice was required because a dismissal pursuant to rule 225 is self-executing, i.e., a court *must* dismiss a case 45 days after receiving notice of settlement. Defendant errs. Due process requires notice before a dismissal of a case may be entered. (See *Reid* v. *Balter* (1993) 14 Cal.App.4th 1186, 1193 [18 Cal.Rptr.2d 287]; *Cordova* v. *Vons Grocery Co.* (1987) 196 Cal.App.3d 1526, 1531 [242 Cal.Rptr. 605]; *Gilbertson* v. *Osman* (1986) 185 Cal.App.3d 308, 313-314 [229 Cal.Rptr. 627], disapproved on other grounds in *Woods* v. *Young* (1991) 53 Cal.3d 315, 328, fn. 4 [279 Cal.Rptr. 613, 807 P.2d 455]; see also *Wilson* v. *Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 561, fn. 7 [194 Cal.Rptr. 773, 669 P.2d 9].) █ As one court noted, parties must distinguish "the authority of a court to dismiss a case because of the actions (or inactions) of its litigants [from] the procedural requirements that precede any such dismissal. At a minimum, such requirements include notice to the plaintiff of a motion or intent to dismiss and an opportunity for plaintiff to be heard." (*Reid* v. *Balter, supra,* 14 Cal.App.4th at p. 1193.)

█ This notice requirement is implicitly incorporated in rule 225, which authorizes a court to dismiss a case after receiving notice of settlement "*unless* good cause is shown why the case should not be dismissed." (Italics added.) A party must be given notice and an opportunity to make such a showing of good cause.

Defendant also suggests that plaintiffs could have made a timely notice to vacate the judgment of dismissal because defendant's motion for new trial

gave plaintiffs notice that such a judgment had been entered. Defendant notes the first sentence of the points and authorities submitted in support of its motion for new trial explicitly stated: "A Judgment of Dismissal was entered on July 9, 1992."

There are two problems with defendant's argument. First, we question whether this sentence constitutes notice, particularly as the very next sentence states: "The Judgment was based upon the stipulation of the parties, made in open court on April 22, 1992." The only reasonable assumption one could make from these two sentences is that defendant meant to refer to the judgment entered in August 1992. If a judgment of dismissal had been entered, why would defendant be filing a motion for new trial?

Second, and more importantly, the "notice" by defendant does not substitute for compliance with section 1013, subdivision (a). As noted previously, strict compliance with statutory provisions for service by mail is required, and improper service will be given no effect. (*Sharp* v. *Union Pacific R.R. Co.*, *supra*, 8 Cal.App.4th at p. 360; *Dobrick* v. *Hathaway*, *supra*, 160 Cal.App.3d at p. 921; *Triumph Precision Products, Inc.* v. *Insurance Co. of North America*, *supra*, 91 Cal.App.3d at p. 365; *Valley Vista Land Co.* v. *Nipomo Water & Sewer Co.*, *supra*, 255 Cal.App.2d at p. 174.) For example, in *Triumph Precision Products, Inc.*, *supra*, time for filing a notice of appeal did not begin to run when the notice of an order for new trial was sent to the proper address but without the name of the law firm, resulting in nondelivery. (91 Cal.App.3d at pp. 364-365.) The court held: "Where the envelope containing the notice is improperly addressed, it is as though notice were never mailed by the clerk." (*Id.* at p. 365.)

Here, the clerk failed to comply with section 1013, subdivision (a), in sending the rule 225 notice to plaintiffs. Consequently, the notice was of no effect. Defendant's claim to the contrary is meritless.

## II. *Defense of Constructive Eviction*

██ Defendant asserts the court erred in concluding the terms of the lease precluded defendant from asserting a defense of constructive eviction for plaintiffs' breach of the covenant of quiet enjoyment.[5] We disagree.

Paragraph 33(viii) of the lease provided: "Quiet Possession. Upon Tenant paying the rent reserved hereunder and observing and performing all of the

---

[5]As the Restatement Second of Property notes, "[t]he line between the landlord's interference with his tenant's access to the property for any permissible use, . . . and his failure to maintain the leased property in tenantable condition, . . . is blurred." (Rest.2d Property, § 6.1, reporter's notes, note 2, p. 231.) Because defendant places its claim on the covenant of quiet enjoyment side of the line, we have no occasion to map the contours of this blurry line.

covenant conditions and provisions on Tenant's part to be observed and performed hereunder, Tenant shall have quiet possession of the Premises for the entire term hereof, subject to all the provisions of this Lease."

As one court explained: "Initially, the covenant [of quiet enjoyment] related solely to the right of possession and only protected the lessee against any act of molestation committed by the landlord or anyone claiming under him, or by someone with paramount title, which directly affected the tenant's use and possession of the leased premises; the covenant was construed to protect the lessee against physical interference only. [Citation.] In recent years, the covenant of quiet enjoyment has been expanded, and in this state, for example, it insulates the tenant against any act or omission on the part of the landlord, or anyone claiming under him, which interferes with a tenant's right to use and enjoy the premises for the purposes contemplated by the tenancy." (*Petroleum Collections Inc.* v. *Swords* (1975) 48 Cal.App.3d 841, 846 [122 Cal.Rptr. 114].)

Here, the parties' lease explicitly gave defendant the right to quiet enjoyment of the premises. Defendant claims this covenant was breached by the plaintiffs' failure to remedy the ventilation problems caused by the adjoining dry cleaning business. It asserts this breach amounted to a constructive eviction, entitling him to vacate the premises and cease paying rent. Defendant is mistaken.

Paragraph 33(viii) states defendant "shall have quiet possession of the Premises for the entire term [of the lease], *subject to all the provisions of this Lease*." (Italics added.) Paragraph 24 of the lease, entitled "Default by Landlord," specifically provides: "*In no event shall Tenant have the right to terminate this Lease as a result of Landlord's default and Tenant's remedies shall be limited to damages and/or an injunction*." (Italics added) The parties thus contracted to limit defendant's remedies in the event of a breach of the lease by plaintiffs: defendant's only remedies were to be damages and/or injunctive relief.

The covenant of quiet enjoyment is codified in California. "An agreement to let upon hire binds the letter to secure to the hirer the quiet possession of the thing hired during the term of the hiring . . . ." (Civ. Code, § 1927.) Under this section, there is an implied covenant on the part of a landlord that a tenant shall have quiet enjoyment and possession of the premises during the continuation of the term. (*McDowell* v. *Hyman* (1897) 117 Cal. 67, 70 [48 P. 984]; *North Pac. S. S. Co.* v. *Terminal Inv. Co.* (1919) 43 Cal.App. 182, 188 [185 P. 205]; see also *Petroleum Collections Inc.* v. *Swords, supra,* 48 Cal.App.3d at p. 846.) But this statutory covenant may be waived by the

parties in commercial leases.[6] Civil Code section 3268 provides: "Except where it is otherwise declared, the provisions of the foregoing titles of this part, in respect to the rights and obligations of parties to contracts, are subordinate to the intention of the parties, when ascertained in the manner prescribed by the chapter on the interpretation of contracts; and the benefits thereof may be waived by any party entitled thereto, unless such waiver would be against public policy." This statute applies to the rights accruing from the covenant of quiet enjoyment under Civil Code section 1927. "Chapter one of Title V, of which section 1927, . . . [is] a part, is embraced within the 15 titles designated in said section 3268 of the Civil Code." (*Kushner* v. *Home Service Co.* (1928) 91 Cal.App. 692, 697 [267 P. 555].)

Consequently, the covenant of quiet enjoyment can be modified or waived by the tenant in a commercial lease setting.[7] (6 Miller & Starr, Current Law of Cal. Real Estate (2d ed. 1989) § 18:88, pp. 214-215; *Kushner* v. *Home Service Co.*, *supra*, 91 Cal.App. at p. 697.) Here, the parties modified the covenant by limiting the remedies defendant might otherwise be entitled to in the event of a breach by plaintiffs. The lease specifically permits defendant to seek only damages or injunctive relief.

As we noted in *Guntert* v. *City of Stockton* (1976) 55 Cal.App.3d 131, 140 [126 Cal.Rptr. 690, 127 Cal.Rptr. 602]: "A number of decisions describe a rule declaring that a nonphysical interference with the tenant's enjoyment constitutes a constructive eviction; that the tenant may not recover for the eviction unless he first vacates the premises. [Citations.] Another version of the rule is that the covenant of quiet enjoyment is not breached until there has been an actual or constructive eviction. [Citations.] [¶] Stated in these flat terms, the rule would preclude a tenant from seeking damages for a breach of quiet enjoyment not amounting to an eviction. Stated in these terms, the rule is incomplete, for it fails to recognize the tenant's choice of

---

[6]Civil Code section 1953, subdivision (a), provides that lease agreements whereby the tenant agrees to modify or waive certain specified rights are "void as contrary to public policy." This section, however, applies only to leases of "a dwelling" and hence has no application to this commercial lease.

[7]As noted by the Restatement Second of Property, "[t]he parties to a lease may agree to increase or decrease what would otherwise be the obligations of the landlord with respect to the condition of the leased property and may agree to expand or contract what would otherwise be the remedies available to the tenant for the breach of those obligations, and those agreements are valid and binding on the parties to the lease unless they are unenforceable in whole or in part because they are unconscionable or significantly against public policy." (Rest.2d Property, *supra*, § 5.6, p. 215.) No claim is made here that the provisions of the lease in this case limiting the remedies available to the tenant for the breach of the landlords' covenant of quiet enjoyment are unconscionable or against public policy.

remedies for breach of the lease, namely, his option to stand upon the lease and sue for damages."[8]

The lease limited defendant's remedies to damages or injunctive relief in the event of a breach of the covenant of quiet possession. The court properly ruled defendant was precluded from vacating the premises and asserting a constructive eviction defense.[9]

## DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Blease, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 17, 1994. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.

---

[8]Defendant's reliance upon *Leider* v. *80 William St. Co.* (1964) 22 A.D.2d 952 [255 N.Y.S.2d 999], is misplaced. The *Leider* court refused to uphold a similar lease provision dealing with the landlord's default because a tenant could never claim a breach of the covenant of quiet enjoyment as no act of the landlord would ever amount to an eviction. Whatever the rule may be in New York, it is clear in California that a tenant may waive its rights for breach of the covenant of quiet.

[9]We therefore have no occasion to resolve plaintiffs' claim that the previous dismissal of defendant's cross-complaint acted as a retraxit, barring a defense based on constructive eviction.