[No. G037991. Fourth Dist., Div. Three. May 28, 2008.]

MATT WHITEHEAD et al., Plaintiffs and Respondents, v.
DOUGLAS HABIG et al., Defendants and Appellants.

COUNSEL

Douglas B. Habig, in pro. per., for Defendants and Appellants.

The Reis Law Firm and Sean P. Reis for Plaintiffs and Respondents.

OPINION

MOORE, J.—Douglas and Gayla Habig appeal from a judgment following summary adjudication and their failure to appear at trial, resulting in a default judgment. They argue that summary adjudication should not have been granted and that they were denied due process with respect to the notice of trial. We find no error and affirm.

I

FACTS

Matt and Mary Whitehead (the Whiteheads) own a house in Anaheim (the property). In September 2001, they entered into a lease and purchase agreement (the agreement) with Douglas and Gayla Habig (the Habigs). The agreement used a standard form lease, under which the Habigs would pay $1,850 per month. An addendum provided that the lease would last for two years, and further stated: "With respect to the option to purchase lessee would put up as good faith money for the option two things; (1) Five Thousand, ($5000) in cash, which would apply toward the purchase price, but which would be forfeited if lessee fails to buy within the two year period; and (2) improvements to the house in the form of new quality carpeting and painting the outside of the house, which they estimate to cost at least $5000.00. These improvements will not be applied toward the purchase price of the house. Lessee and lessor will guarantee price of $289,000 when they close on the purchase of the house." The option was drafted by Douglas Habig (Habig), who is an attorney.

On October 7, 2003, the Habigs sent the Whiteheads a letter stating the Habigs' intent to exercise the option to purchase the property pursuant to the agreement. The letter did not include the tender of the purchase price, nor did it identify the mechanism by which the purchase price would be paid. A second letter from Habig followed, on October 20, stating that the property's heating and air conditioning system showed the presence of mold and other allergens. The letter asserted that the Whiteheads were responsible for remediating these issues, and concluded, "Obviously, we cannot proceed with

the sale of the house until you have remediated this serious situation, since the house is presently not in a marketable condition."

On October 28, the Whiteheads' attorney, Jonathan C. Cavett, sent the Habigs a letter that stated that, to properly exercise the option, the Habigs were required to buy the property by the end of the lease term on October 31, 2003. The letter stated that Habig had contacted Matt Whitehead and stated that given the mold issue, Habig did not intend to close the purchase by October 31. Cavett stated: "The mold issue is a separate issue having no bearing on your obligation to timely purchase the subject property."

Habig responded on October 30, stating that he had opened escrow on October 21 and was "ready, willing and able to purchase the house at the present time." He further stated that he had obtained financing.[1] The letter went on to say, however, that the Whiteheads had failed in their obligation to "warrant fitness for use and merchantability and to disclose conditions of the property through inspections and certification. Since the Whiteheads have failed to perform these inspections and provide such certifications, they cannot proceed to sale until they have met this obligation. In addition, the Whiteheads['] obligation to warrant fitness for use of the property as a residential home requires them to remediate conditions that violate such warranties."

Habig identified the presence of mold as one such condition, stating "this condition is one that renders the house both unfit for its intended use and unmerchantable. . . . California law requires that the Whiteheads remediate any such unfitness and unmerchantability of the property." After detailing his concerns about the condition, he concluded: "Therefore, I look forward to the Whiteheads undertaking their obligation to inspect the property, remediate the toxic mold and provide us with the necessary certifications that the house complies with applicable warranties of fitness and merchantability. When they have performed their obligations, Susan and I are prepared, as we are now, to tender the purchase price and close on the house." Habig reiterated this sentiment in a subsequent letter on October 31.

Thus, October 31 passed without the tender of the purchase price. Subsequently, the Habigs refused to vacate the property or pay further rent. On July 6, 2004, the Whiteheads filed a complaint against the Habigs for breach of contract, declaratory relief, ejectment, and quiet title. The Habigs responded, answering and filing a cross-complaint for specific performance, breach of contract, breach of implied warranties, and negligence.

---

[1] The Habigs received a letter on October 29, stating they were approved for financing of $289,000, conditional on the property appraising for at least $390,000. The appraisal, however, was dated November 5, at which time the property appraised for $417,000.

In April 2005, the Whiteheads filed a motion for summary judgment, or in the alternative, summary adjudication of issues in the complaint and cross-complaint. The Habigs filed an opposition but did not file a separate statement, instead filing an "objection" to the Whiteheads separate statement.

On July 21, the trial court granted summary adjudication in the Whiteheads' favor on their causes of action for declaratory relief and quiet title, and on the cross-complaint's claims for specific performance and breach of contract. Because the Whiteheads' remaining claims, breach of contract and ejectment, required adjudication of damages, the court denied summary adjudication.[2]

The trial court scheduled a settlement conference and trial for early 2006. The Habigs failed to appear at the settlement conference, and the court issued a minute order taking it off calendar but keeping the trial date as scheduled for February 6. On the day scheduled for trial, Habig appeared and filed a notice of stay based on the Habigs' filing of a petition for bankruptcy the prior Friday, February 3. The trial court took the trial off calendar and set a bankruptcy review hearing for May 12.

According to the Whiteheads, the bankruptcy case was dismissed due to the Habigs' failure to timely file documents. On April 25, the trial court granted the Whiteheads' ex parte motion to set the case for trial, and the trial was set for May 30. On May 17, the Whiteheads sent the Habigs a notice of ruling, by first class mail, to the property address.

The Habigs failed to appear at trial on May 30. The court dismissed the cross-complaint and held a default prove-up on the remaining claims in the complaint. The court entered judgment in the Whiteheads' favor for $50,050, and on October 18, final judgment for $50,050 plus interest and costs was entered.[3] The Habigs appeal.

## II

## DISCUSSION

*Summary Judgment*

The trial court granted the Whiteheads' motion for summary adjudication based both on the substance of the motion and the Habigs' failure to file the

---

[2] On August 10, the Whiteheads dismissed their ejectment claim and filed a separate unlawful detainer action, eventually regaining possession.

[3] The Habigs filed a second bankruptcy petition, of which the Whiteheads received notice after the May 30 trial. According to the Whiteheads, the bankruptcy court later granted them relief from stay nunc pro tunc to May 30. Thus, the trial did not violate the bankruptcy stay.

required separate statement of facts in opposition. "We generally review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. [Citations.] The trial court's decision to grant a motion for summary judgment because the opposing party failed to comply with the requirements for a separate statement, however, is reviewed for an abuse of discretion. [Citations.]" (*Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1208 [35 Cal.Rptr.3d 411].) "In applying the abuse of discretion standard of review, it is not the role of the appellate court to substitute its own view as to the proper decision. [Citation.] The trial court's discretion, however, 'is not unlimited and must be " 'exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.' " [Citations.]' [Citation.] Moreover, we carefully examine a trial court order finally resolving a lawsuit without permitting the case to proceed to a trial on the merits. [Citations.]" (*Ibid.*)

 A separate statement is a required part of opposing a summary judgment motion. Code of Civil Procedure section 437c, subdivision (b)(3) states: "The opposition papers shall include a separate statement that responds to each of the material facts contended by the moving party to be undisputed, indicating whether the opposing party agrees or disagrees that those facts are undisputed. The statement also shall set forth plainly and concisely any other material facts that the opposing party contends are disputed. Each material fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence. Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion."

California Rules of Court, rule 3.1350(d)[4] further explains the requirement: "The Separate Statement of Undisputed Material Facts in support of a motion must separately identify each cause of action, claim, issue of duty, or affirmative defense, and each supporting material fact claimed to be without dispute with respect to the cause of action, claim, issue of duty, or affirmative defense. In a two-column format, the statement must state in numerical sequence the undisputed material facts in the first column followed by the evidence that establishes those undisputed facts in that same column. Citation to the evidence in support of each material fact must include reference to the exhibit, title, page, and line numbers." Rule 3.1350(e) makes it clear that the opposition must also include a separate statement.

---

[4] References to a rule or rules are to the California Rules of Court.

The separate statement is not merely a technical requirement, it is an indispensible part of the summary judgment or adjudication process. "Separate statements are required not to satisfy a sadistic urge to torment lawyers, but rather to afford due process to opposing parties and to permit trial courts to expeditiously review complex motions for . . . summary judgment to determine quickly and efficiently whether material facts are disputed." (*United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 335 [282 Cal.Rptr. 368].)

The document the Habigs claim is an adequate "separate statement" is captioned "Objections to Separate Statement of Undisputed Facts." In its entirety, it states: "Defendants and Cross-Plaintiffs, Douglas and Gayla Habig, hereby object to and contest the following portions of the Separate Statement of Undisputed Material Facts submitted by Plaintiffs and Cross-Defendants, Matt and Mary Whitehead: [¶] 1. Article II, Issue 1, Sections 4 and 5. [¶] 2. Article II, Issue 2, Sections 4 and 5." If this document was intended as an evidentiary objection, it fails because it does not include any argument or citation to authority. If it was intended as an opposing separate statement, it fails because it does not include citations to any evidence. The Habigs claim this document was sufficient because this was not a complex case and their "objection" was therefore sufficient to place the court on notice that material facts were disputed. They instead blame the court for failure to review their pleadings and evidence.

The Habigs miss the point entirely. The separate statement is required, not discretionary, on the part of each party, and the statutory language makes the failure to comply with this requirement sufficient grounds to grant the motion. (Code Civ. Proc., § 437c, subd. (b)(3).) Their attempt to shift the blame for their failure to comply to the court, without any case authority demonstrating that the court abused its discretion, is both incorrect and misplaced.

The Habigs further characterize their "objection" as a "good faith effort" to inform the court of disputed material facts. Yet we query why such an "effort" should be deemed sufficient when the Habigs were certainly given notice of their failure to file a proper separate statement. The Whiteheads, along with their reply brief, filed a reply separate statement, which stated: "The Habigs failed to file a Separate Statement of Undisputed and Disputed Facts. The Habigs' failure to comply with this requirement is grounds for granting the Whiteheads' motion, as none of the facts set forth in the motion are disputed." The Habigs took the time to file a sur-reply to the Whiteheads' reply brief, and could have used that opportunity to remedy their deficiency.

■ The Habigs chose not to comply with the statutes governing summary adjudication, and we find no abuse of discretion on the court's part. An abuse

of discretion is an action which is arbitrary or capricious, or without basis in reason. (*Blackman v. Burrows* (1987) 193 Cal.App.3d 889, 893 [238 Cal.Rptr. 642].) The Habigs' conclusory arguments fail to show any such action on the part of the trial court, and summary adjudication, therefore, was properly granted.

*Due Process*

The Habigs argue that they were denied due process because of improper notice of the trial date, resulting in a default judgment. The Habigs, however, never filed or served the change of address required by rule 2.200, and thus the Whiteheads continued to serve them at the property, their address of record.

The Habigs first argue that the notice of the trial date was inadequate. On April 25, 2006, the Whiteheads moved ex parte to set a trial date. The court granted the motion, setting the trial date for May 30, and ordered the Whiteheads to give notice. The notice of ruling was dated May 17. The Habigs claim this was "dilatory" and would have given them only 10 days' notice of the trial date.

We agree that notice should have been swift, given the circumstances, and perhaps this argument would have been persuasive in the trial court, resulting in a continuance. It does not, however, excuse the Habigs from appearing at trial at all, and it does not provide grounds to reverse the judgment. (The case the Habigs cite on this point, *Bricker v. Superior Court* (2005) 133 Cal.App.4th 634 [35 Cal.Rptr.3d 7], does not stand for the proposition cited, as it has nothing to do with the adequacy of notice of pending proceedings.)

With respect to the service address, the Habigs claim that the Whiteheads were well aware that they had been evicted from the property following summary judgment. They also claim the Whiteheads had constructive notice of their new mailing address (a post office box) because it was on documents associated with bankruptcy proceedings. Nonetheless, the fact remains that the Habigs never filed a change of address with the court. Further, mail sent to a former address is deemed properly served for up to one year after the change of address because postal regulations require the postal service to forward first class mail at no charge during that period. (*Lee v. Placer Title Co.* (1994) 28 Cal.App.4th 503, 509–510 [33 Cal.Rptr.2d 572].) The court did not begin receiving returned mail from the property address until November. Given these facts, we find no denial of due process.

## III

## DISPOSITION

The judgment is affirmed. The Whiteheads are entitled to their costs on appeal.

Rylaarsdam, Acting P. J., and O'Leary, J., concurred.

A petition for a rehearing was denied June 12, 2008, and appellants' petition for review by the Supreme Court was denied August 27, 2008, S165042.