Filed 12/11/14  Whiting v. Himelman CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| TIMOTHY LEWIS WHITING, | |
| Plaintiff and Appellant, | E058637 |
| v. | (Super.Ct.No. INC10008352) |
| RONALD B. HIMELMAN, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Jeffrey L. Gunther,

Judge.  (Retired Judge of the Sacramento Sup. Ct. assigned by the Chief Justice pursuant

to art. VI, § 6 of the Cal. Const.)  Affirmed.

Timothy Lewis Whiting, in pro. per., for Plaintiff and Appellant.

Lotz, Doggett & Rawers, Jeffrey S. Doggett and Iris G. Glezer for Defendant and

Respondent.

I

INTRODUCTION

This medical malpractice action arises from plaintiff Timothy Lewis Whiting

1

suffering from chest pains, which led to Dr. Ronald Himelman performing coronary angiogram surgery on Whiting. Whiting appeals from judgment entered after the trial court granted Dr. Himelman's motion for summary judgment on the ground Whiting failed to provide expert testimony refuting Dr. Himelman's expert's testimony regarding causation and standard of care. Whiting contends expert medical testimony was not required to prove his medical battery cause of action. He claims evidence of a lack of informed consent was sufficient. Whiting also argues Dr. Himelman's extrajudicial admission provided the requisite expert testimony needed to prove medical malpractice.

We conclude Whiting has not established he is able to prove the necessary elements of his medical battery and medical malpractice claims. Therefore the trial court did not err in granting Dr. Himelman's summary judgment motion. The judgment is affirmed.

II

FACTS AND PROCEDURAL BACKGROUND

On November 12, 2009, at 2:00 a.m., Whiting went to the emergency room (ER) at Desert Regional Medical Center (Medical Center). Whiting, who was 46 years old at the time, complained he had been suffering from chest pain for about eight hours. His symptoms were worse when lying down. Dr. Himelman treated Whiting with aspirin, Pepcid, and a GI cocktail. An EKG showed Whiting had sinus bradycardia with first degree block. Dr. Himelman noted Whiting was not in distress but suffered from atypical chest pain.

Whiting underwent an exercise Cardiolite echocardiogram, in which Dr.

2

Himelman monitored the exercise stress portion of the echocardiogram. The test results showed Whiting had adequate exercise tolerance with no electrocardiographic evidence of ischemia. The test results for the Cardiolite perfusion portion of the test were negative. On November 12, 2009, Dr. Himelman also performed a transthoracic echocardiogram on Whiting. Whiting's test results were normal, with no significant abnormalities, other than trivial regurgitation in the aortic, mitral, pulmonic, and tricuspid valves. There was no pericardial effusion (escape of fluid).

On November 13, 2009, Dr. Himelman performed coronary angiogram surgery, which included left heart catheterization with ventriculography (the act or process of making an X-ray photograph of a ventricle of the heart after injecting a radiopaque substance); right and left coronary angiography (the radiographic visualization of the blood vessels after injection of a radiopaque substance); and right sheath side-port angiography. Before Dr. Himelman performed the surgery, Whiting was advised of the risks, benefits, and alternatives of the procedures and sedation, and Whiting signed consent forms for the procedures and sedation.

There were no complications during the surgery. The test results showed no angiographic evidence of coronary artery disease. Dr. Himelman reported that hemostasis (stoppage of bleeding) was "successful using a sealant (Angioseal)." The Angioseal was used to stop bleeding by sealing the femoral artery. The Angioseal sandwiched the puncture site between a bio-absorbable anchor and a collagen sponge, which dissolves within 60 to 90 days. Dr. Himelman recommended Whiting add an angiotensin-converting enzyme (ACE) inhibitor and instructed Whiting to followup in the

3

near future with a Veterans Administration physician. Whiting was discharged from the Medical Center on November 13, 2009, in stable condition.

In September 2010, Whiting filed a medical malpractice lawsuit against Dr. Himelman and other defendants. After several demurrers, Whiting filed a fourth amended complaint containing causes of action for medical malpractice and medical battery (complaint). Whiting alleges in the complaint that Dr. Himelman and Jon Doe #1 M.D. committed medical malpractice and medical battery by implanting a medical devise inside Whiting's body without his consent, while performing unnecessary consensual coronary angiogram surgery. The medical device implant allegedly resulted in permanently damaging Whiting's heart.

Whiting alleges in his medical malpractice cause of action that defendants negligently performed the coronary angiogram surgery and negligently cared for Whiting, in violation of the applicable standard of medical care, by (1) failing to inform Whiting of the implantation of a catheter cap in his body; (2) failing to warn Whiting of the dangerous side effects of the device; and (3) failing to schedule a 90-day follow-up appointment to ascertain if the device had dissolved. Whiting alleges in the medical battery cause of action that, although he consented to coronary angiogram surgery, defendants performed a substantially different medical procedure by implanting a catheter cap in his body without his consent.

Dr. Himelman filed a summary judgment motion, supported by copies of Whiting's Medical Center records and an expert medical declaration by clinical and interventional cardiologist, Dr. C. Alan Brown. Dr. Himelman's expert, Dr. Brown,

4

stated that Dr. Himelman's treatment of Whiting was within the standard of care and did not cause any injury to Whiting. Dr. Brown stated the only device Dr. Himelman used was an Angioseal vascular closure device, which was appropriate and did not require consent.

Whiting filed opposition, along with his own supporting declaration. The court heard and granted Dr. Himelman's summary judgment motion on the grounds Whiting had not presented any evidence raising a triable issue of fact as to whether Dr. Himelman breached the applicable standard of care and causation. The trial court concluded summary judgment was appropriate because Whiting had not offered any expert testimony rebutting Dr. Himelman's expert's testimony regarding causation and standard of care.

III

SUMMARY JUDGMENT LEGAL STANDARDS

A moving party is entitled to summary judgment when that party establishes the right to entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant meets this burden by demonstrating that the plaintiff cannot establish one or more elements of its cause of action, or that the defendant has a complete defense to the cause of action. (*Towns v. Davidson* (2007) 147 Cal.App.4th 461, 466.)

"[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. . . . There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the

5

motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fns. omitted.)  "[G]enerally, the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Ibid.*)  "A prima facie showing is one that is sufficient to support the position of the party in question." (*Ibid.*)

On appeal, the reviewing court makes "'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.  [Citations.]'" (*Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1143, quoting *Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222-223.)

IV

NONCOMPLIANCE WITH SECTION 437c REQUIREMENTS

When responding to a motion for summary judgment, under Code of Civil Procedure, section 437c, subdivision (b)(3),[1] "The opposition papers shall include a separate statement that responds to each of the material facts contended by the moving

---

[1] Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

party to be undisputed, indicating whether the opposing party agrees or disagrees that those facts are undisputed.  The statement also shall set forth plainly and concisely any other material facts that the opposing party contends are disputed.  Each material fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence.  Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion." (See also Calif. Rules of Court, rule 3.1350(f).[2])

Whiting's opposition to Dr. Himelman's motion for summary judgment fails to respond to each of the material facts stated in Dr. Himelman's separate statement of material facts.  This deficiency, alone, is a sufficient ground for the trial court granting Dr. Himelman's summary judgment motion.  "The separate statement is required, not discretionary, on the part of each party, and the statutory language makes the failure to comply with this requirement sufficient grounds to grant the motion.  (Code Civ. Proc., § 437c, subd. (b)(3).)"  (*Whitehead v. Habig* (2008) 163 Cal.App.4th 896, 902 (*Whitehead*).)

Whiting's separate statement of undisputed material facts in opposition to Dr. Himelman's motion for summary judgment states that "Defendant's facts based on medical records 1 through 25" are "Disputed.  Tampering.  Plaintiff incorporates by reference their comments upon the Defendants Undisputed Material Facts and Supporting Evidence 1 through 25.  [¶] **Defendant's EXHIBIT "A" Medical Records**."  Whiting's

_____

[2] Undesignated rule references are to the California Rules of Court.

7

separate statement of undisputed material facts further states that "Defendant's references to plaintiff's fourth amended complaint 26 through 38" are "Disputed. Plaintiff incorporates by reference their comments upon the Defendants Undisputed Material Facts and Supporting Evidence 26 through 38. [¶] **See Plaintiff's Declaration.**"

Whiting's opposing separate statement of undisputed material facts is inadequate and fails to comply with the requisites for successfully opposing summary judgment set forth in section 437c and rule 3.1350. As explained in rule 3.1350(f), "Each material fact claimed by the moving party to be undisputed must be set out verbatim on the left side of the page, below which must be set out the evidence said by the moving party to establish that fact, complete with the moving party's references to exhibits. On the right side of the page, directly opposite the recitation of the moving party's statement of material facts and supporting evidence, the response must unequivocally state whether that fact is 'disputed' or 'undisputed.' An opposing party who contends that a fact is disputed must state, on the right side of the page directly opposite the fact in dispute, the nature of the dispute and describe the evidence that supports the position that the fact is controverted. That evidence must be supported by citation to exhibit, title, page, and line numbers in the evidence submitted."

Although Whiting indicates in his opposing separate statement that he disputed each of Dr. Himelman's 38 material facts, he does not adequately state with specificity the basis for disputing each fact and describe the evidence establishing the particular fact is controverted. Whiting merely cites his medical records included in Dr. Himelman's Exhibit A, regarding facts 1 through 25, and Whiting's declaration, regarding facts 26

8

through 38. The purpose of the moving party's separate statement and the opposing separate statement is to assist in establishing whether the parties have met their burdens of proof. "The separate statement is not merely a technical requirement, it is an indispensable part of the summary judgment or adjudication process. 'Separate statements are required not to satisfy a sadistic urge to torment lawyers, but rather to afford due process to opposing parties and to permit trial courts to expeditiously review complex motions for . . . summary judgment to determine quickly and efficiently whether material facts are disputed.'" (*Whitehead, supra,* 163 Cal.App.4th at p. 902, quoting *United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 335.)

Whiting's opposing separate statement is too generalized to assist the court in determining whether there is any specific evidence raising a triable issue of fact. Whiting's failure to comply with the separate statement requirements constitutes sufficient grounds to grant summary judgment. However, even apart from this valid technical basis for granting summary judgment, the trial court did not err in ruling on the merits that Whiting failed to raise any material triable issues of fact, as discussed below.

V

MEDICAL BATTERY

Whiting argues that proving medical battery does not require expert testimony. Evidence of a lack of informed consent is sufficient. Whiting contends Dr. Himelman committed medical battery by implanting a medical device and allowing an unidentified doctor to perform part of the surgery without Whiting's consent.

"A battery is an intentional and offensive touching of a person who has not

9

consented to the touching.  [Citations.]  Although typically a battery is a violation of a person's wishes to avoid bodily contact that is hostile, aggressive or harmful, the tort is committed if there is unwanted intentional touching of any kind.  [Citation.]  . . . Thus, lack of consent is an essential element of battery.  [Citation.]"  (*Conte v. Girard Orthopaedic Surgeons Medical Group, Inc.* (2003) 107 Cal.App.4th 1260, 1266 (*Conte*).)  To prevail on a claim for civil battery, the plaintiff must prove:  (1) the defendant intentionally acted in a manner that resulted in a harmful or offensive contact with the plaintiff; (2) the plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to the plaintiff.  (*Piedra v. Dugan* (2004) 123 Cal.App.4th 1483, 1495.)

"A typical medical battery case is where a patient has consented to a particular treatment, but the doctor performs a treatment that goes beyond the consent."  (*Conte, supra,* 107 Cal.App.4th at p. 1267.)  "'The scope of the defendant's protection is the scope of the consent.  If his conduct would be tortious except for consent and his conduct goes beyond the consent. . . ., he is subject to liability.'  [Citation.]  In the medical battery context, the scope of the consent is important because the gist of such battery is that the doctor has intentionally touched the patient without consent or in a manner that exceeds the consent and without justification.  [Citations.]"  (*Id.* at p. 1268.)

"The battery theory should be reserved for those circumstances when a doctor performs an operation to which the patient has not consented.  When the patient gives permission to perform one type of treatment and the doctor performs another, the requisite element of deliberate intent to deviate from the consent given is present."

10

(*Cobbs v. Grant* (1972) 8 Cal.3d 229, 240-241.)

Here, there was insufficient evidence to establish any triable issue of material fact as to Whiting's medical battery cause of action. Whiting based his medical battery claim on the theory Dr. Himelman performed a substantially different medical procedure than that which Whiting consented to and permitted an unidentified doctor to assist him in the surgery, without Whiting's consent. Whiting acknowledges he consented to coronary angiogram surgery, but argues Dr. Himelman performed an additional procedure; that of implanting a medical device (a catheter cap) in Whiting's body without his consent. Whether use of the Angioseal was a completely different procedure was beyond the general knowledge of a lay person. Therefore such determination required expert opinion. Dr. Himelman provided Dr. Brown's expert opinion that the procedure was not a completely different procedure requiring separate consent. Because this determination was beyond the knowledge of a lay witness, expert opinion was required to refute this determination. (*Jambazian v. Borden* (1994) 25 Cal.App.4th 836, 848-849.)

Dr. Himelman met his burden of establishing there was no merit to Whiting's medical battery cause of action by relying on Dr. Brown's expert testimony, and Whiting failed to provide any expert rebuttal evidence. Dr. Himelman's expert witness, Dr. Brown, who is board certified in internal medicine, cardiovascular disease, and interventional cardiology, established in his declaration that using the Angioseal, which Whiting refers to as a catheter cap, did not constitute a substantially different medical procedure than that which Whiting consented to. Dr. Brown further stated in his declaration that Dr. Himelman successfully stopped Whiting's bleeding during the

11

surgery (hemostasis) by using an Angioseal vascular closure device sealing Whiting's femoral artery by "sandwiching the puncture site between a bio-absorbable anchor and the collagen sponge, which dissolves within 60 -90 days." In Dr. Brown's opinion, "[t]he use of the Angioseal was appropriate and within the standard of care." Dr. Brown also stated in his declaration that, before the surgery, Dr. Himelman discussed with Whiting in detail the angiogram surgery risks, benefits, and alternatives of the procedures and conscious sedation. Dr. Brown concluded that, because Dr. Himelman did not perform a substantially different medical procedure than the one to which Whiting consented, separate consent to Dr. Himelman's use of the Angioseal was not required.

As to Whiting's contention the catheter cap device was implanted in Whiting without Whiting's consent, Dr. Brown concluded Dr. Himelman did not implant any medical device in Whiting. Dr. Brown explained that Dr. Himelman used an Angioseal vascular closure device as a plug after catheterization, and this was appropriate and within the standard of care. The Angioseal dissolves within 90 days. Dr. Brown further noted the standard of care does not require that separate informed consent be obtained from the patient for use of the Angioseal during the angiogram surgery. Therefore not obtaining informed consent for Dr. Himelman's use of the Angioseal did not fall below the standard of care, since use of the Angioseal was an integral part of the angiogram surgery performed on Whiting, and Dr. Himelman obtained informed consent for the angiogram surgery.

The only evidence Whiting cited in his opposition to summary judgment was his medical records and his own declaration. Whiting's complaint allegations do not

12

constitute a valid form of evidence which Whiting can rely on to defeat summary judgment.  (*Kurokawa v. Blum* (1988) 199 Cal.App.3d 976, 988-989 (*Kurokawa*).)  "Except to the extent those allegations were factually supported by legally competent evidence contained in declarations, answers to interrogatories, or deposition testimony, they are of no moment in ruling upon the summary judgment motion.  Since the object of the motion is to discover whether *proof* exists to support a claim, the adverse party (Kurokawa) *cannot* rely on her verified pleading to defeat the motion."  (*Ibid.*)

As to Whiting's declaration and medical records, they do not provide any evidence rebutting Dr. Brown's expert opinion testimony establishing Dr. Himelman did not commit medical battery.  Whiting stated in his declaration that on November 12, 2009, he went to the ER at the Medical Center and underwent numerous tests to determine the source of his chest pains.  After undergoing a battery of cardiac tests, Dr. Himelman recommended and Whiting consented to coronary angiogram surgery.  On November 13, 2009, Dr. Himelman performed the coronary angiogram surgery, with the assistance of other physicians and medical staff.  During most of the surgery, Whiting was unconscious due to anesthesia.  After the angiogram surgery, Dr. Himelman informed Whiting the angiogram showed no artery blockages and Whiting was released from the Medical Center.

In December 2009, Whiting returned to the Medical Center ER, complaining of a strange feeling and pain on the left side of his chest, along with other stomach and thyroid discomfort.  Despite suffering excruciating pain, Whiting's chest X-rays were normal.  Two days later, Whiting experienced vomiting and a choking sensation.  He was

13

transported to the Medical Center ER in an ambulance. Again, the ER physicians were unable to determine the source of Whiting's chest pains and other symptoms, and Whiting was released from the Medical Center. Whiting continued to experience on a daily basis post surgical complications, including chest pains, thyroid swelling, headaches, fatigue, nerve pain, muscle twitching, loss of appetite, and urinary tract problems.

Whiting attempted to obtain copies of his medical records but the Medical Center refused to provide him access to his records. Whiting further stated in his declaration that, on May 12, 2012, Dr. Himelman's attorney, Robert Fessinger, told him during a phone conversation that Dr. Himelman implanted a medical device, a catheter cap, inside Whiting's body, which was the possible cause of Whiting's post-surgery medical problems. The catheter cap should have dissolved within 90 days. Dr. Himelman allegedly did not tell Whiting he implanted the medical device inside Whiting's body. According to Whiting, he felt pain from the medical device moving in his chest and continued to experience severe, permanent disabling injuries and mental anguish from the negligently performed surgery.

Whiting's declaration does not refute Dr. Brown's expert opinion that Dr. Himelman did not perform a substantially different medical procedure than that which Whiting consented to. According to Dr. Brown's expert opinion, Whiting consented to coronary angiogram surgery; the standard of care did not require Dr. Himelman to obtain informed consent from Whiting for the use of the Angioseal because the use of the Angioseal was an integral part of the surgery performed on Whiting; Dr. Himelman

14

performed the coronary angiogram surgery within the medical standard of care; the use of the Angioseal did not constitute implantation of a medical device; and the use of the Angioseal was within the medical standard of care and did not constitute a substantially different medical procedure than that which Whiting consented to.

Whiting's argument that Dr. Himelman admitted he implanted a medical device in Whiting's body established medical battery, lacks merit because Whiting relies on inadmissible hearsay, which does not constitute an admission by Dr. Himelman. Evidence Code section 1200 defines inadmissible hearsay as any "statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." Whiting's statement in his declaration that Fessinger said Dr. Himelman implanted a medical device constitutes hearsay which does not fall within the hearsay exception for party admissions because there was no admission by Dr. Himelman qualifying as a hearsay exception. (Evid. Code, § 1220 ["Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party. . . ."].) Whiting relies on his own statement in his declaration, in which Whiting states Dr. Himelman's attorney, not Dr. Himelman, told Whiting during a phone conversation that Dr. Himelman implanted a medical device, a catheter cap, inside Whiting's body. Since Dr. Himelman did not make the statement, it does not qualify under the admissions exception to the hearsay rule.

Whiting also failed to provide any evidence supporting his medical battery contention that, without Whiting's consent, a second, unidentified doctor performed part of the angiogram surgery under Dr. Himelman's supervision. But Whiting signed a

15

consent form regarding cardiac catheterization, agreeing that "this invasive cardiological procedure will be performed for you by your physician and/or other physicians selected by the physician."  Whiting also signed a consent form agreeing "The operations or procedures will be performed by the doctor(s) named below . . ., together with associates and assistants, including anesthesiologists, pathologists, and radiologists from the medical staff of the *facility listed in patient ID Section* to whom the doctor(s) performing the procedure may assign designated responsibilities."

Furthermore, Whiting stated in his declaration that he was unconscious during most of the surgery and therefore would not have known whether another physician performed the Angioseal portion of the surgery or what the circumstances were for doing so.  Whiting claims that at one point he was aware of a second doctor present during the surgery.  However, Whiting has not identified the doctor and has not established that the unidentified doctor actually performed any portion of the surgery or performed below the standard of care and harmed Whiting.

Whiting has not presented any evidence establishing that he can prevail on his medical battery cause of action against Dr. Himelman.  The trial court therefore properly granted summary judgment as to Whiting's medical battery cause of action.

VI

MEDICAL MALPRACTICE

Whiting contends the trial court erred in granting summary judgment as to his medical malpractice cause of action based on Whiting not providing any expert testimony

16

refuting Dr. Brown's expert testimony that Dr. Himelman's conduct fell within the medical standard of care.

"[I]n any medical malpractice action, the plaintiff must establish: '(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.' [Citation.]" (*Gami v. Mullikin Medical Center* (1993) 18 Cal.App.4th 870, 877; in accord, *Hanson v. Grode* (1999) 76 Cal.App.4th 601, 606 (*Hanson*).)

Whiting concedes that normally expert opinion testimony is required in a medical malpractice action to establish breach of the medical standard of care. This is because "'''"[t]he standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proved by their testimony [citations] . . . .' [Citations.]" [Citations.]' [Citation.] '"California courts have incorporated the expert evidence requirement into their standard for summary judgment in medical malpractice cases. When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence." [Citations.]' [Citation.]'" (*Hanson, supra,* 76 Cal.App.4th at pp. 606-607.) Here, Whiting did not provide any expert opinion evidence refuting Dr. Brown's expert testimony that Dr. Himelman's conduct fell within the medical community standard of

17

care.

Citing *Lashley v. Koerber* (1945) 26 Cal.2d 83, Whiting argues that Dr. Himelman's own extrajudicial admission satisfied the expert testimony requirement. The court in *Lashley* stated: "The expert testimony which establishes plaintiff's prima facie case in a malpractice action may be that of defendant. [Citations.] We can presume that defendant in testifying will state his case as favorably to himself as possible. [Citation.] And extrajudicial admissions of defendant have the same legal competency as direct expert testimony to establish the critical averments of the complaint. [Citation.] It is true that an extrajudicial statement amounting to no more than an admission of bona fide mistake of judgment or untoward result of treatment is not alone sufficient to permit the inference of breach of duty; the statement 'must be an admission of negligence or lack of skill ordinarily required for the performance of the work undertaken.' [Citation.] But as above indicated, in reviewing a judgment of nonsuit, where defendant's statements or inferences drawn therefrom conflict, the conflict must be resolved in favor of plaintiff; where the statements are reasonably susceptible of more than one meaning, that meaning is to be placed on them which is favorable to plaintiff." (*Id.* at pp. 89-90.)

Whiting argues that Dr. Himelman made an extra judicial admission that he implanted a medical device in Whiting's body and this satisfied the expert testimony requirement. Whiting has not provided any admissible evidence that Dr. Himelman made such an admission. Whiting also argues that Dr. Himelman's attorney, Fessinger, attempted to strike the admission from the record during the hearing on Dr. Himelman's demurrer to the fourth amended complaint, and the trial court denied the request and

18

ruled the admission was admissible evidence. Whiting mischaracterizes the trial court's demurrer ruling.

Whiting alleged in his fourth amended complaint that Dr. Himelman's attorney, Fessinger, "on May 12, 2011, during a telephone conversation with plaintiff, asserted that his client Defendant Himelman did in fact implant a medical device inside of plaintiff's body which was the possible cause of plaintiff's post-surgery medical problems. This medical device identified by Fessinger as a 'catheter cap' should have dissolved itself away 'within a 90 day period.'" As previously noted in this opinion, allegations in a complaint do not constitute a valid form of evidence which Whiting can rely on to defeat summary judgment. (*Kurokawa, supra,* 199 Cal.App.3d at pp. 988-989.)

Furthermore, during the May 11, 2012 hearing on Dr. Himelman's demurrer to the complaint, the trial court did not make any ruling as to the admissibility of Fessinger's hearsay statement. During the demurrer hearing, the trial court rejected Dr. Himelman's argument that Fessinger's alleged May 2011 statement to Whiting could not be the basis of a medical battery claim because it was privileged. The trial court explained that the litigation privilege (Civ. Code, § 47, subd. (b)(2)) did not apply because it extends to the act of communicating, not the content of the communication or the conduct spoken about. Here, Whiting's claims are not based on Fessinger's communications but, rather, on Dr. Himelman's conduct of allegedly implanting a catheter cap without Whiting's consent. Contrary to Whiting's mischaracterization of the trial court's May 11, 2012 ruling, the trial court found that the litigation privilege did not apply and overruled the demurrer. The trial court did not rule that Dr. Himelman made an extrajudicial admission or that

19

Fessinger's statement was admissible evidence.

As discussed in the preceding section of this opinion, Fessinger's statement to Whiting made during a telephone conversation does not constitute an extrajudicial admission by Dr. Himelman because Fessinger, not Himelman, made the statement and Fessinger's characterization of the Angioseal as an implanted medical device was not an admission by an expert but, rather, an inaccurate medical conclusion by a lay person. This statement, relied upon by Whiting as the basis of his medical malpractice claim, does not constitute expert opinion or an admission by Dr. Himelman. The trial court therefore did not err in granting Dr. Himelman's motion for summary judgment, since Dr. Himelman established a complete defense to Whiting's medical battery and medical malpractice causes of action based on Dr. Brown's unrefuted expert testimony.

## VII

## DISPOSITION

The judgment is affirmed. Dr. Himelman is awarded his costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

McKINSTER

Acting P. J.

KING

J.

20