Filed 2/24/23  Bagnarol v. Bagnarol CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| FRANCIS BAGNAROL et al,<br><br>　　　Plaintiffs and Respondents,<br><br>v.<br><br>CAROLINA BAGNAROL,<br><br>　　　Defendant and Appellant. | A163703<br><br>(San Mateo County<br>Super. Ct. No. 18CIV03397) |

Carolina Bagnarol appeals from a judgment confirming an arbitration award obtained against her and her sister, Nadine, by their brothers, Francis and Anthony, and sisters-in-law, Mary and Sheila.[1]  The arbitrator awarded plaintiffs substantial damages and equitable relief due to Carolina's mismanagement of the family's elder-care business.  On appeal, Carolina contends the judgment is void because the trial court did not have jurisdiction to appoint an arbitrator or confirm the final arbitration award.  We reject these contentions and affirm the judgment.

---

[1]  We refer to individual members of the Bagnarol family by their given names.  Francis, Anthony, and their wives Mary and Sheila are referred to collectively as plaintiffs.  Nadine is not a party to this appeal, but she and Carolina are referred to collectively as defendants.  The record reflects that there is another Bagnarol sibling who is not directly involved in this litigation.

1

# BACKGROUND

## I. The Underlying Action

In June 2018, plaintiffs filed a complaint seeking damages and equitable relief for Carolina's mismanagement of A Family Affair Elder Care, LLC (the Company). According to the complaint, the Company was formed in 2008 to operate an elder-care business that had been established by the parents of the Bagnarol siblings, and was jointly owned by plaintiffs and defendants. The Company's care facilities were located at two properties in Redwood City: 826-828 Vera Avenue, and 817 Canyon Road. These properties were also jointly owned by the parties.

Plaintiffs alleged that Carolina was responsible for the day-to-day operations of the elder care business and mismanaged the Company by, among other things, failing to pay taxes and maintain business records, and paying substantial funds to herself without explanation or justification. Plaintiffs also alleged Carolina used Company assets to purchase and renovate a warehouse on Bayport Avenue in San Carlos, which she used as her personal residence without paying rent, and that Carolina permitted Nadine to live rent-free at the Vera facility. Carolina, Nadine, and the Company were named defendants, along with other entities that were later dismissed. Plaintiffs sought compensatory and punitive damages for breach of fiduciary duty and orders to dissolve the Company, partition through sale the Vera and Canyon properties, and compel an accounting.

In September 2018, plaintiffs filed a proof of service indicating that their summons and complaint were served on Carolina by substitute service. After several attempts to personally serve Carolina at the Bayport warehouse and the Canyon facility, the process server served the documents to a person at Canyon who appeared to be in charge of the office. Carolina, represented

2

by attorney Alison Madden, moved to quash service, arguing that plaintiffs made an inadequate attempt to serve Carolina and that Canyon was not the Company's place of business. This, in spite of the fact that the Operating Agreement for the Company states the principal office is Canyon "or such other places as the Members from time to time designate." In October, Carolina's motion to quash was denied because her default had already been entered. In late November, the default was set aside pursuant to the parties' stipulation, which required defendants to respond to the complaint by November 26.

On November 26, 2018, defendants filed a petition to compel arbitration, which they amended the following month. (Code Civ. Proc., § 1281 et seq.; statutory references are to this code, unless otherwise indicated.) Defendants argued that arbitration was mandatory pursuant to an arbitration clause in the Company's Operating Agreement, a copy of which was attached to their petition. Plaintiffs opposed arbitration, and moved to disqualify Madden from representing the Company due to her conflicting interests. In January 2019, Madden was disqualified from representing the Company and the court sought further briefing on the motion to compel arbitration. On March 15, 2019, the court granted defendants' motion to compel and ordered the parties to participate in mediation prior to arbitration.[2]

---

[2] The arbitration provision in the Operating Agreement states: "In the event a dispute arises out of or in connection with this Agreement, the parties will attempt to resolve the dispute through friendly consultation. If the dispute is not resolved within a reasonable period, then any or all outstanding issues may be submitted to mediation in accordance with any statutory rules of mediation. If mediation is not successful in resolving the entire dispute or is unavailable, any outstanding issues will be submitted to final binding arbitration in accordance with the laws of the State of

3

On July 5, 2019, the State Bar Court of California issued an order suspending defendants' counsel, Ms. Madden, from practicing law, effective July 29. The suspension was precipitated by Madden's recent conviction for felony driving under the influence of alcohol causing injury. On August 22, Madden sent letters to defendants and plaintiffs' counsel, Mr. Wailes, giving formal notice of her suspension. (See Cal. Rules of Court, rule 9.20.) Both letters described Madden's suspension as a non-final "summarily-granted, interim suspension" from practicing law. Madden stated that she had filed a motion to vacate, delay or temporarily stay the effective date of the interim suspension so that she could continue to represent defendants, and that she would advise the parties of the outcome of that motion.

In her letter notice to the defendants, Madden stated that she had informed the State Bar court of the "faith and trust" that defendants had placed in her, and of defendants' "prior lack of success with other counsel." Madden expressed her hope that she would be allowed to continue to represent defendants in this case, but she also advised them that if her suspension was not vacated "replacement counsel must be obtained."

On August 21, 2019, the day before Madden served notices of her suspension, Madden sent a courtesy copy of the notice to Carolina via email along with a note indicating that she was required by law to send the notice and that she would discuss the matter with Carolina. Carolina responded that she was "totally freaking out" about the possibility of Madden's suspension. Carolina bristled at the prospect of losing her trusted counsel and at the cost of having to "educate another attorney." She ended her email

---

California. The arbitrator's award will be final, and judgment may be entered upon it by any court having jurisdiction within the State of California."

4

by stating: "If you are denied the stay, we will have to wait until your return to practice."

On August 29, 2019, Madden filed the notices of her suspension in the superior court. That same day, the State Bar court granted Madden's motion to "stay and temporarily delay" her interim suspension, with modifications. In the interests of justice, the court vacated its July 2019 order to give defendants more time to obtain new counsel. The court ordered that Madden was to be placed back on interim suspension effective December 1, 2019.

On August 30, 2019, Madden notified plaintiffs' counsel and the parties' mediator that the State Bar had vacated her suspension, thus enabling her to continue to represent defendants. Mediation was completed on September 26, 2019. By that time, several months had passed since the court had granted defendants' petition to compel arbitration, and plaintiffs attributed the delay to defendants. The mediation was unsuccessful and the following day, plaintiffs filed a demand for arbitration before JAMS, which was served on Madden via email pursuant to the parties' agreement to accept email service.

On October 9, 2019, Madden submitted a letter to JAMS objecting to plaintiffs' arbitration demand on the grounds that (1) defendants had not agreed to use JAMS, and (2) a "derivative" investigation on behalf of the Company had not yet been completed. Plaintiffs viewed the matter as another delay tactic, and Wailes argued that defendants had no right to investigate their own conduct on behalf of the Company. Madden disagreed, sending at least 22 emails to Wailes and/or JAMS objecting to plaintiffs' arbitration demand, and she also informed plaintiffs of her intent to seek an ex parte order to prevent the arbitration from going forward. On October 28, JAMS rejected plaintiffs' arbitration demand due to Madden's objections.

5

Meanwhile, on October 25, 2019, Madden began serving a custodial sentence for her DUI conviction. She did not give plaintiffs notice of her incarceration. On November 8, Wailes called Madden and left her a message that on November 12, plaintiffs would apply ex parte for an order establishing a procedure for appointing an arbitrator. Wailes also sent Madden an email to the same effect. He received no automatic response or other message indicating that Madden was unavailable due to her incarceration or for any other reason. According to Wailes, Madden never told him she was going to jail. On November 12, Wailes's request for an ex parte order was denied.

On November 15, 2019, plaintiffs filed a motion to appoint an arbitrator, which was served on Madden. In a declaration supporting the motion, Wailes stated that Madden had previously advised plaintiffs she wanted JAMS to perform the arbitration, but after the unsuccessful mediation, Madden objected to JAMS and would not agree to select an arbitrator. While this motion was pending, Madden's interim suspension went into effect on December 1. Madden did not give plaintiffs notice of this renewed suspension. According to Wailes, Madden never told him that she had been suspended again by the State Bar or that she no longer represented defendants in this case.

On January 15, 2020, the hearing on plaintiffs' motion to appoint an arbitrator was continued until February 13, pursuant to an uncontested tentative ruling. The court's minute order states: "According to a notice filed by Defendants' counsel on August 29, 2019, Defendants' counsel has been suspended. No substitute counsel has entered an appearance on behalf of Defendants. Accordingly, the matter is continued to provide Defendants an opportunity to obtain substitute counsel."

6

On February 6, 2020, plaintiffs filed a supplemental declaration of counsel in support of their motion to appoint an arbitrator. Wailes stated that the court may not have been aware that after Madden filed her notice of suspension, she obtained an order reinstating her as active, as of August 29, 2019, which had enabled her to continue to represent defendants in this case. Wailes also stated that he confirmed Madden had been returned to active status by checking the State Bar website, but that the website also showed that "the State Bar suspended Ms. Madden again on December 1, 2019." Finally, Wailes stated that he served defendants with notice of the continued hearing by mail at 826 Vera and had not received any communication from them since then.

On February 13, 2020, the court granted plaintiffs' motion to appoint an arbitrator pursuant to section 1281.6, after its tentative ruling to the same effect was uncontested. The next day, plaintiffs arranged for a messenger to personally serve notice of this ruling to the defendants at 826 Vera. The ruling was also memorialized in an order establishing a procedure for selecting the arbitrator, which was filed on February 21, 2020. In this order, the court nominated five potential candidates, and gave the parties five days after receipt of notice of the list of nominees to jointly select an arbitrator, who did not need to be one of the nominees. If the parties failed to agree on an arbitrator, the court ordered that it would appoint an individual from its list.

On March 9, 2020, the court appointed the Honorable James P. Kleinberg as the arbitrator in this action. The order reflects that the time for the parties to jointly select an arbitrator had passed and that Judge Kleinberg had no conflicts in the case. The parties were ordered to contact Judge Kleinberg's case manager at JAMS, Jason Clark. The court clerk

served notices of the February 21 order and the March 9 order by mail to the parties' counsel of record, i.e., Madden and Wailes.

## II. The Arbitration

On March 13, 2020, Jason Clark contacted plaintiffs' counsel by email to request various documents and the arbitrator's fee. Clark stated that it was his understanding that defendants were "now in pro per," and he requested their contact information. In a reply email, Wailes confirmed that defendants were unrepresented, and provided 826 Vera as contact information for both Carolina and Nadine based on the following facts: the property is jointly owned by the parties; 826 Vera is the location where Nadine works and lives; Carolina manages the elder care business at 826-828 Vera; and Carolina receives mail at 826 Vera "since she resides at one of the other real properties owned by the family business which is not zoned for residential use." Wailes stated he would mail a copy of his email to defendants because he did not have an email address for them. He also reported that he had previously used his office messenger to serve defendants with proposed orders and orders, but they had "harassed" the messenger to the point that she refused to return there. On April 27, Clark responded to Wailes by email and requested telephone numbers for Carolina and Nadine, which Wailes provided two days later.

On May 27, 2020, Clark began sending the parties material relating to the arbitration, including the notice of appointment of an arbitrator and various disclosures and policies pertaining to JAMS. Clark served defendants by mailing separate packets of documents addressed to each of them at 826 Vera. On July 6, Clark sent a letter to defendants requesting that they contact JAMS about unpaid arbitration fees. Clark advised that any other party could assume responsibility for payment of the fees in order

8

to expedite the matter and that JAMS rules permit the arbitrator to preclude a non-paying party from presenting evidence of any affirmative claim. Subsequently, plaintiffs paid defendants' share of the fees so the arbitration could proceed.

On July 17, 2020, Clark notified the parties he was attempting to schedule a conference call and proposed three dates in August. He requested that the parties respond by email with dates and times that matched their schedules. The proof of service for this notice indicates that JAMS served defendants by mail at 826 Vera instead of by email because Carolina and Nadine both declined to provide email addresses. The conference call was scheduled for August 11, 2020. Notice of this date was mailed to defendants on July 28. On August 10, a staff member from JAMS also called Carolina about the meeting. Carolina did not call in to participate in the conference.

The arbitration hearing was scheduled for October 5 and 6, 2020. On September 23, plaintiffs served Carolina with documents relating to the arbitration, including various notices, a JAMS report, and a scheduling order. In a declaration of due diligence, the process server described his experience serving these documents: There was a single mailbox at the Vera property, which "denotes that both units are 826-828." On September 11, there were multiple vehicles in the driveway and it appeared someone was inside, but nobody answered the door. On September 15, there were multiple vehicles, but again no answer. On September 20, both units were well lit, someone was "definitely inside," but there was no answer at the "residence/business." On September 23, when the process server arrived at the property, the door to the front unit stood open and when the process server announced his presence, Nadine came to the door. Nadine asked the server to leave documents on the porch and told him Carolina did not live there. Then a

9

man began yelling that Carolina did not live there. The process server completed service and took his leave as the man came out of the unit in an aggressive manner, screaming and slamming the wrought iron screen door. He followed the process server and threw the documents into the sunroof of the process server's car. The process server placed the documents on the sidewalk where the man was standing and left.

On September 29, 2020, Carolina sent a letter to Judge Kleinberg, which was captioned as a "Demand" to continue the arbitration. In this largely digressive letter, Carolina stated that she was requesting that the arbitration hearing be continued until the San Mateo County superior court "opened back up . . . for in-person trials." She acknowledged knowing that the arbitration was scheduled for October 5, 2020, but argued the hearing should be vacated because (1) she was "never properly notified," (2) she was in pro per, and (3) JAMS had sent documents to Vera, despite having a copy of the Company's Operating Agreement, which lists Canyon as "the proper address" for the Company.[3] Carolina argued further that the arbitration should be continued because there was a COVID pandemic, and her first priority was preserving her clients' lives. Carolina sent this demand to JAMS and plaintiffs by mail and email, her email stating that "it has previously been agreed to e-serve, so this is e-service."

In a reply to Carolina's email, Wailes outlined plaintiffs' objections to Carolina's request for an indefinite postponement of the arbitration.

---

[3] Carolina acknowledged that she also knew about the August 11, 2020, scheduling conference because "Julie from JAMS" had called her the day before that conference was held. Carolina told Judge Kleinberg she had informed Julie that she could not participate in a conference call while working long shifts at the elder care facility, that she was not represented by counsel, and that the Vera facility was not her proper mailing address.

10

Regarding notice, Wailes stated that Vera was the proper address for serving defendants because: It is one of two facilities operated by the Company; Nadine lives there; and Carolina is the licensed responsible operator of that facility, so it is one of her two places of business. Wailes also made these points: Carolina could not be served at the Bayside warehouse because it was not zoned as a residence, and she had evaded being served there. Nor could she be served at Canyon because when plaintiffs served the complaint there, Carolina challenged service and submitted a declaration stating: " 'The Canyon location is not the business headquarters of the family business.' "

On September 30, 2020, Judge Kleinberg denied Carolina's request for a continuance of the arbitration hearing in a letter that was served via email. After "carefully" reviewing Carolina's letter and the arbitration file, Judge Kleinberg concluded that the "history of this dispute" did not support Carolina's "last-minute attempt to postpone the hearing," and provided Carolina a "partial list of undisputed facts" supporting his conclusion: Carolina had requested the arbitration that was ordered by the court and subsequently took no steps to have the court reverse or modify its ruling; Carolina "consistently refused to provide an email address" before sending her September 29 letter; the licensed process server who personally served documents at Vera was chased by an occupant; issues affecting the scheduling of court proceedings had no bearing on the arbitration going forward; and the parties did not need to worry about the pandemic because the arbitration would be conducted via remote Zoom technology. Judge Kleinberg ended his letter by stating that Carolina had sufficient notice of the arbitration schedule, and confirming that Carolina was free to attend the hearing via Zoom, and/or to have counsel appear on her behalf.

11

On October 1, 2020, Carolina sent additional emails to Judge Kleinberg requesting that he continue the arbitration hearing. Carolina complained that she had been without counsel to assist her because her former counsel was subject to an interim suspension as of December 1, 2019. Carolina told Kleinberg that she had not spoken to Madden after October 26, 2019, when Madden was taken into custody, and that she did not have time to secure new counsel since then because of the demands of her work and the COVID pandemic. Carolina also "protest[ed]" the use of email to provide her notice, claimed she never wanted arbitration, and reported that she would seek ex parte relief from the court. Judge Kleinberg sent an email responding to Carolina's various complaints and reiterating that her request for a continuance was denied.

On the morning of October 5, 2020, when the arbitration began, neither defendant appeared. While plaintiffs were eliciting testimony from Francis, Carolina called in to the hearing and confirmed on the record that she had received plaintiffs' exhibits. Judge Kleinberg permitted Carolina to participate in the morning session of the hearing, declining to rule on a pending motion in limine by the plaintiffs to preclude defendants from presenting evidence or argument due to noncompliance with arbitration rules.

Carolina did not call in to participate in the afternoon session of the October 5 hearing. Judge Kleinberg stated that he had reviewed plaintiffs' in limine motion during the break and was prepared to grant it. He made a record of the defendants' failure to give plaintiffs notice of their defenses and counterclaims, failure to comply with discovery rules, which required cooperating in good faith and an informal exchange of documents and information pertinent to the dispute, and failure to pay any part of their

12

share of the arbitration fees. Judge Kleinberg also found that defendants "had more than sufficient time to retain counsel to represent them in this matter, and for whatever reason, they didn't do so." Thus, Carolina would be permitted to listen to the hearing if she called in, but she would not be allowed to present testimony or argument. As it turned out, Carolina did not attempt to rejoin the hearing, which concluded the next day.

On October 14, 2020, Judge Kleinberg issued an amended scheduling order, which modified his in limine ruling by permitting the defendants to file a post-hearing brief. Carolina's submission included a closing brief, declarations, and four volumes of exhibits.

On December 17, 2020, Judge Kleinberg issued a 26-page final award, which contains a detailed summary of evidence of egregious mismanagement and malfeasance by Carolina. In a paragraph summarizing his findings, Judge Kleinberg stated: "Carolina lied, concealed facts, failed to pay mortgages, taxes, and creditors. She caused millions of dollars of damage to the [Company] and [plaintiffs]. She must be expelled from the [Company], and Vera and Canyon sold, so that [plaintiffs] can recoup some of their losses, which Carolina has used to produce millions of dollars of profit that she then spent for herself and Nadine." Judge Kleinberg found that Carolina's breach of fiduciary duty and malfeasance caused plaintiffs $1,547,524 in damages, and damages to the Company in the amount of $4,616,924.

The arbitration award provides that Carolina shall be removed as a member of the Company, and that she must turn over all Company books, accounts, and assets. Vera and Canyon are to be partitioned by sale and Carolina's interests in these properties are to be transferred to plaintiffs, along with Carolina's interest in the Company. The award excludes Nadine from sharing in the distribution of Carolina's interests due to her

13

participation in Carolina's tortious activity.  Carolina must vacate the Bayport warehouse and Nadine must vacate Vera.

The arbitration award also requires Carolina to pay damages to plaintiffs in the amount of $1,716,993 and to the Company in the amount of $1,954,439, which gives her credit for the value of the interests she must forfeit.  Carolina must also pay $250,000 in punitive damages "for her fraud, malfeasance, and breaches of fiduciary duty."

## III.  Confirmation of Award and Entry of Judgment

On December 18, 2020, Carolina filed a Notification of Proceeding Pro Per in the superior court, which stated:  "This filing notifies the court that I am pro per in the arbitration and this action, and I am proceeding in pro per if and when (as I intend) this action returns to the superior court."  In this filing, Carolina also stated that she had not had time to review the arbitrator's award, but she had recently discovered that the Operating Agreement that was used in the arbitration was a forgery, and she intended to file a motion "based on fraud and unconscionability."  Finally, Carolina notified the court that Canyon was the "proper" address for the Company.

On December 28, 2020, plaintiffs filed a petition in the superior court to confirm the final arbitration award, which was served on Nadine at the Vera facility and on Carolina at Canyon.  Neither defendant filed opposition nor appeared at the hearing on this motion, which was granted on March 24, 2021, after a tentative ruling went uncontested.

On March 24, 2021, the same day the final arbitration award was confirmed, Madden filed a "notification as an Active member of the California Bar," but "not as an attorney in this action/matter."  Madden stated that she recently discovered she was "still potentially listed" as defendants' attorney of record, and that she also recently discovered "CCP Sec. 286, which pertains

14

to suspended attorneys." Madden then gave a convoluted explanation as to why she believed that filing notices of her interim suspension automatically disqualified her from acting as defendants' counsel of record. Madden also expressed doubt as to whether plaintiffs complied with section 286 by providing defendants with written notice that they were required to either retain new counsel or appear in person before further proceedings could be conducted.

On April 19, 2021, defendants filed a motion to vacate all proceedings in this case subsequent to August 29, 2019, the date Madden filed notices of her interim suspension. This motion was filed for defendants by a new attorney, Mr. Akay, and was based on two grounds. First, defendants alleged that plaintiffs failed to provide them with written notice of Madden's suspension pursuant to section 286. Second, defendants invoked the court's equitable power to vacate proceedings resulting from fraud.

On August 9, 2021, the trial court denied the motion to vacate the arbitration award in a 19-page order. The court concluded that defendants waived their notice rights under section 286 and failed to prove their assertions of fraud. In reaching these conclusions, the court found, among other things, that defendants had actual notice and knowledge of their attorney's suspension prior to any subsequent proceedings and intentionally took no steps to obtain new counsel. The court also found that the deadline for bringing a statutory motion to vacate the arbitration award had passed before defendants filed their motion to vacate, and they did not establish a basis for invoking the court's equity power to vacate a judgment due to extrinsic fraud.

A judgment confirming the arbitration award was entered on August 23, 2021. Carolina timely appealed.[4]

## DISCUSSION

Carolina contends the judgment is void for two independent reasons: (1) documents pertaining to the process for appointing an arbitrator were served at 826 Vera, which is not a proper address for Carolina; and (2) after Madden was suspended from practicing law, plaintiffs did not serve Carolina with the written notice required by section 286. According to Carolina, these alleged errors deprived the trial court of jurisdiction to take any further action in this case. As we explain, the trial court had fundamental jurisdiction in the underlying action, and the errors alleged by Carolina on appeal do not void the judgment.

## I. **The Court's Jurisdiction**

A judgment is void when rendered by a court that lacks jurisdiction " 'in its most fundamental or strict sense,' " meaning there is " 'an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' " (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660 (*American Contractors*).) The phrase " ' "lack of jurisdiction" ' " is also used to describe a different problem that occurs when a court has jurisdiction over the subject matter and parties, but it has " 'no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites.' " (*Id.* at p. 661.) "When a court has fundamental

_____

[4] On December 9, 2021, this court denied Carolina's petition for a writ of supersedeas and request for an immediate stay of the judgment. Carolina's petition for review was denied by the Supreme Court on December 17, 2021.

16

jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable." (*Id*. at p. 661.)

This distinction between void and voidable judgments can be important because a void judgment is subject to attack at any time, but a party may be precluded from setting aside a voidable judgment or order "by 'principles of estoppel,' " among other reasons. (*American Contractors*, *supra*, 33 Cal.4th at pp. 660 & 661.) " '[A] party may, by its conduct, be estopped from contesting an action in excess of jurisdiction.' " (*Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1092.) " ' "Whether he shall be estopped depends on the importance of the irregularity not only to the parties but to the functioning of the courts and in some instances on other considerations of public policy." ' " (*Ibid*.)

The record here shows that the trial court had subject matter jurisdiction in the present action.[5] Superior courts are courts of general jurisdiction, which gives them subject matter jurisdiction over a plaintiff's state law claims. (*Benitez v. Williams* (2013) 219 Cal.App.4th 270, 275–276.) Moreover, "the arbitration agreement confers subject matter jurisdiction on the trial court to order the parties to arbitration." (*United Firefighters of Los Angeles v. City of Los Angeles* (1991) 231 Cal.App.3d 1576, 1582 (*United Firefighters*).)

The record also shows that the court acquired personal jurisdiction over Carolina. " 'A summons is the process by which a court acquires personal jurisdiction over a defendant in a civil action' [citation], and a defendant has

---

[5] " ' "Subject matter jurisdiction . . . is the power of the court over a cause of action or to act in a particular way." [Citations.] By contrast, the lack of subject matter jurisdiction means the entire absence of power to hear or determine a case; i.e., an absence of authority over the subject matter.' " (*Saffer v. JP Morgan Chase Bank, N.A.* (2014) 225 Cal.App.4th 1239, 1248.)

an absolute right to demand that process be issued against [her] in a manner prescribed by law.  As a general rule, however, the provisions of the rules governing service of process are to be liberally construed." (*Mannesmann Demag, Ltd. v. Superior Court* (1985) 172 Cal.App.3d 1118, 1122.)  In this case, Carolina filed a motion to quash service of the summons and complaint on her, but she abandoned her objection and then submitted to the court's jurisdiction by, among other things, filing a joint stipulation with the plaintiffs to set aside the default that had been entered against her, and then invoking the trial court's authority to compel arbitration of the plaintiffs' claims.  Carolina's general appearance in this action was "equivalent to personal service of [the] summons" on her.  (§ 410.50, subd. (a); see e.g., *Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1147.)

Thus, as a preliminary matter, we find the trial court obtained fundamental jurisdiction over the subject matter and parties in this action.  If rulings Carolina challenges on appeal were acts in excess of that jurisdiction, they could render the judgment voidable, but not void.  When a court acts in excess of jurisdiction, its acts or judgment are valid until set aside and, as noted, a party may be precluded by principles of estoppel from setting them aside.  (*American Contractors*, *supra*, 33 Cal.4th at p. 661.)

## II.  The Arbitrator's Appointment

Carolina contends the trial court lacked jurisdiction to appoint an arbitrator because documents pertaining to that appointment were served at 826 Vera, which was not a proper service address for Carolina.  In making this claim, Carolina does not dispute that notice of the plaintiffs' motion to appoint an arbitrator was validly served on Madden in November 2019, when she was still representing defendants and not subject to any interim suspension order.  Carolina's theory here is that allegedly improper service of

18

other, subsequent documents pertaining to the procedure for appointing the arbitrator *deprived* the court of jurisdiction to make the appointment or indeed to take any further action in this case.

## A. The Trial Court Was Not Divested of Jurisdiction

Without disputing that the trial court at one point had fundamental jurisdiction over Carolina and the decision to appoint an arbitrator, Carolina contends "the trial court *lost* that jurisdiction when respondents (and the court) failed to serve Carolina with prior notice of the appointment-related orders." We reject this contention because it is unsupported by any authority that would divest a court of its fundamental jurisdiction to hear and decide a motion, notice of which was validly served on all non-moving parties, simply because subsequent, related orders were not served. "[W]e generally presume courts have jurisdiction unless specifically curtailed by the Legislature," so " 'an intent to defeat the exercise of the court's jurisdiction will not be supplied by implication.' " (*Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 342–343.)

Carolina insists that failure to strictly comply with rules for serving documents can deprive a court of fundamental jurisdiction, but the cases she cites are inapposite. For example, she attempts to invoke the principle that "an order made without notice is void," (*Forslund v. Forslund* (1964) 225 Cal.App.2d 476, 485), which ignores the fact that Carolina received proper notice of the motion to appoint an arbitrator.

Carolina also relies on authority requiring strict compliance with statutory requirements for serving notice before dismissal of a case. (*Lee v. Placer Title Co.* (1994) 28 Cal.App.4th 503 (*Lee*).) *Lee* was an unsuccessful appeal from a judgment holding the defendant liable for failure to pay rent. (*Id.* at pp. 505–506.) Pertinent here, the defendant argued for the first time

19

on appeal that the judgment was void because the trial court had previously dismissed the plaintiff's case. (*Id*. at p. 508.) The *Lee* court rejected this claim, concluding that it was the prior dismissal order (not the judgment) that was void. This finding was based on undisputed evidence that the superior court clerk mailed notice that the court was contemplating dismissing the case to plaintiff's counsel's prior office address despite the fact that a change of address had been filed with the court. (*Id*. at p. 509.)

The *Lee* court rejected the argument that formal notice of the potential dismissal was unnecessary. (*Lee*, *supra*, 28 Cal.App.4th at p. 509–510.) Instead, the court found that "[d]ue process requires notice before a dismissal of a case may be entered," and "[a]t a minimum, such requirements include notice to the plaintiff of a motion or intent to dismiss and an opportunity for plaintiff to be heard.'" (*Ibid*.) The defendant in *Lee* also argued that the notice defect was inconsequential as there was other evidence that plaintiffs had notice their case could be dismissed. Rejecting this argument, the *Lee* court reasoned that because strict compliance with statutory provisions for service by mail is required, the improperly addressed notice was "of no effect." (*Id*. at p. 511.)

*Lee* is inapposite, as the present appeal has nothing to do with the due process rights of a plaintiff whose case is subject to dismissal. Carolina fails to show that she had the same due process right to notice prior to appointment of an arbitrator, but even if she could make that showing, there is no dispute on appeal that plaintiffs' motion to appoint an arbitrator *was* properly served in this case. *Lee* is not authority for Carolina's materially different claim that an alleged defect in the service of documents pertaining to a properly noticed motion deprived the court of fundamental jurisdiction.

Carolina also cites *Bosworth v. Whitmore* (2006) 135 Cal.App.4th 536, which holds that a trial court has power to set an arbitration completion date if that deadline is not established by the arbitration agreement. (*Id.* at p. 550.) While that holding is not relevant here, *Bosworth* goes on find that a replacement arbitrator's appointment violated the parties' contract, with the result that his arbitration award was without effect. In language that is relevant to the case before us, *Bosworth* explained that if the selection of an arbitrator is unauthorized, " '[u]nless this fundamental defect is waived by the parties, or a party is estopped from raising it, there is simply nothing to confirm.' " (*Id.* at p. 553.) *Bosworth*, in other words, confirms that acts in excess of the court's jurisdiction to regulate an arbitration proceeding— including an improper appointment of an arbitrator—are subject to waiver and estoppel. (*Id.* at p. 553.)

## B. Carolina Forfeited Her Defective Notice Claim

To the extent Carolina would argue that the trial court exceeded its jurisdiction by appointing an arbitrator, we conclude she forfeited this claim by failing to raise it below. As noted, she did not file opposition to plaintiffs' motion to confirm the arbitration award, and even her motion to vacate, which was filed too late to raise any statutory objection to the arbitration award under section 1286.2, was limited to two other grounds—the alleged violation of section 286 and unproven assertions of fraud. " 'As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal.' " (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997, quoting Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2015) ¶ 8:229; p. 8-167.)

Carolina contends that she did raise her defective service argument in her motion to vacate. We disagree. In that motion, Carolina claimed that

plaintiffs committed fraud by leading JAMS to believe that Vera Avenue was a proper address for serving Carolina with documents, a claim she failed to prove. Carolina did not contend that improper service of documents deprived the trial court of jurisdiction to appoint an arbitrator, nor did she challenge that appointment order on any ground. " 'A party is not permitted to change his [or her] position and adopt a new and different theory on appeal. To permit him [or her] to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.' " (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 110–111.)

Taking a different tack, Carolina contends the forfeiture doctrine does not preclude her from arguing for the first time on appeal that a notice defect deprived the court of jurisdiction to appoint an arbitrator. Carolina bases this argument on *United Firefighters*, *supra*, 231 Cal.App.3d 1576. In that case, a city and its fire department appealed from a judgment confirming an arbitration award in favor of a former firefighter (Salas). (*Id.* at p. 1578.) One issue on appeal was whether appellants had forfeited their right to challenge Salas's standing to compel arbitration of his labor dispute by failing to file a timely motion in the trial court to vacate the arbitration award. (*Id.* at pp. 1578–1579.) The *United Firefighters* court found that, although appellants were barred from vacating the arbitration award on any ground enumerated in section 1286.2, they could attack the trial court's authority to compel them to submit the matter to arbitration in the first place. (*Id.* at p. 1581.) The court reasoned that an arbitration agreement confers subject matter jurisdiction on the trial court to order parties to arbitration and, "[s]ince an objection to subject matter jurisdiction may never be waived [citation], appellants can challenge on appeal whether the trial court erred by ordering Salas's grievance to arbitration." (*Id.* at p. 1582.)

22

Unlike the *United Firefighters* appellants, Carolina is not challenging the trial court's jurisdiction to compel arbitration. Indeed, it was Carolina who invoked the court's subject matter jurisdiction to order the parties to arbitrate, a fact that has been repeatedly pointed out to her. Then, after several months of delay, plaintiffs filed a motion to appoint an arbitrator, a motion that was validly served on Carolina's counsel when she was still actively representing her. Nothing in *United Firefighters* supports Carolina's characterization of her defective notice argument as an issue of fundamental jurisdiction that exempts her from the forfeiture doctrine.

## C. Carolina's Defective Notice Claim Lacks Merit

If Carolina may for some reason be allowed to make her claim of defective notice for the first time on appeal, we are not persuaded by her conclusory objections to using the Vera facility as a place to serve her with documents. In reviewing these objections, we are mindful that Carolina, as the appellant, has the burden of affirmatively demonstrating error, and we indulge every presumption to uphold the judgment. (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 549.)

Carolina acknowledges section 1012, which authorizes service by mail at a person's office if the office is a "place where there is a delivery service by mail." Carolina did not have mail service at the warehouse where she lived. But there was a single mailbox at the Vera facility for delivering mail to 826-828 Vera. The record contains evidence that the building on Vera was Carolina's office: Vera was one of two locations where Carolina managed the day-to-day operations of the Company's elder care business, and according to Carolina's own declaration, the other location on Canyon was not the headquarters address, so the Vera address must have been.

23

Carolina contends that because Nadine lived at 826 Vera, 828 Vera was the only valid business address for the Vera Avenue office of the Company and, by extension, for service on Carolina. This reasoning is unsound; the fact that Nadine lived at one of the elder care facilities that Carolina managed on behalf of the Company does not preclude using the address of that facility as a valid office address for Carolina. Moreover, Carolina's attempt to treat 826 and 828 Vera as separate facilities is inconsistent with evidence that the facility used one mailbox for delivery of documents to that location.[6]

Carolina argues that even if 826 Vera was a valid business address for the Company, under section 1013, plaintiffs were required to use Canyon as Carolina's office address for the purpose of serving her with documents. Section 1013 states that a document served by mail "shall be . . . addressed to the person on whom it is to be served, at the office address as last given by that person on any document filed in the cause and served on the party making service by mail; otherwise at that party's place of residence." In this case, before the arbitrator was appointed, Carolina filed her declaration stating that Canyon was *not* a valid business address for serving her with documents. Thus, at least implicitly, Carolina designated Vera as her office address. Ignoring her own declaration, Carolina points out that the notice of Madden's interim suspension was sent to Carolina (and Nadine) at the Canyon address. That document is irrelevant because it was sent *to* Carolina

---

[6] In December 2021, this court denied Carolina's request for judicial notice of an irrelevant document pertaining to a licensing agency's inspection of 828 Vera. Carolina asks this court to reconsider her request for judicial notice. We deny the request for reconsideration.

not by her; the address on Madden's notice was not "the office address last given" by Carolina.[7]

Finally, Carolina contends that even if documents could be served by mail at Vera, plaintiffs also used a messenger to serve some documents. This was impermissible, Carolina argues, because section 1011 provides that documents may be left for a party at their place of residence, and Carolina did not reside at Vera. Section 1011 states that if no specific provision is made for serving documents on a party, documents may be served by leaving them at the party's residence with some person 18 years of age or older, and if a person cannot be found at the party's residence, documents may be served by mail. (§ 1011, subd. (b)(2).) The record contains substantial evidence that Carolina evaded personal service at her residence and that mail could not be delivered to that location, thus making service by mail at her work address an acceptable option. (§§ 1011–1013.)

The record also shows that plaintiffs served some documents by messenger as well as by mail to ensure that Carolina received notice of the court's rulings pertaining to the appointment of an arbitrator. To the extent that one or more documents were only ever served by messenger, Carolina does not demonstrate that this service method deprived her of actual notice or the opportunity to participate in the proceedings that resulted in the appointment of an arbitrator by the trial court. Carolina studiously ignores the undisputed fact that notice of the motion to appoint an arbitrator was

---

[7] When Carolina sought to delay the arbitration hearing, she began arguing that Canyon was in fact her preferred service address. After the arbitration award was issued, Carolina filed a document in the superior court stating that Canyon was the proper business address for the Company. For this reason, plaintiffs' petition to confirm the arbitration award was served on Carolina at Canyon. And yet Carolina chose again not to participate in the proceeding.

properly served, and that the basis for this motion was that the defendants refused to agree to select an arbitrator. Evidence of Carolina's efforts to evade service of documents throughout this litigation supports an inference that Carolina chose not to participate in the procedure for selecting an arbitrator as part of a strategy to prevent plaintiffs from having an opportunity to prove their case.

Carolina contends that "actual notice 'is irrelevant' under the service statutes," citing *Valero Refining Company—California v. Bay Area Quality Management District Hearing Board* (2020) 49 Cal.App.5th 618, 634 (italics omitted). *Valero* holds that a party's actual notice that an appealable judgment has been entered does not trigger the deadline to appeal when notice of entry of judgment was not given in accordance with the strict requirements of the California Rules of Court. (*Valero*, at pp. 634–635.) *Valero* also confirms that in other contexts, notice defects may be of no consequence "where it can be inferred that notice was in fact received." (*Ibid.*; see also *Batchelor v. Finn* (1959) 169 Cal.App.2d 410, 427 [waiver doctrine applies to notice defects alleged by a party that has appeared in the action].) Here, the record supports an inference that Carolina did receive documents that were served at Vera, although she may at times have consciously ignored them. Thus, the alleged defect in service did not deprive Carolina of notice or the opportunity to participate in these proceedings.

### III. Section 286

Carolina's second claim of error is that the trial court did not have jurisdiction to confirm the arbitration award because plaintiffs failed to comply with section 286, which states: "When an attorney dies, or is removed or suspended, or ceases to act as such, a party to an action, for whom he was acting as attorney, must, before any further proceedings are had against him,

26

be required by the adverse party, by written notice, to appoint another attorney, or to appear in person."

Carolina contends that section 286 imposed a statutory duty on plaintiffs to serve Carolina with written notice of Madden's December 1, 2019, interim suspension, and that plaintiffs' failure to give this notice when it was due deprived the trial court of fundamental jurisdiction to enter any subsequent order or judgment against Carolina. (Citing *Aldrich v. San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725 (*Aldrich*).)

In *Aldrich*, the trial court granted a plaintiff post-judgment relief from an order of dismissal that had been entered as a sanction for plaintiff's failure to respond to discovery. (*Aldrich*, *supra*, 170 Cal.App.3d at pp. 731–732.) This relief was affirmed on appeal as a proper exercise of trial court discretion. (*Id.* at p. 736.) As an additional basis for affirmance, the *Aldrich* court found that the trial court's original dismissal order had been "an act in excess of its authority and power to act" because the defendants did not comply with section 286. (*Id.* at p. 743.) The court reasoned that "Section 286 means what it plainly says, '. . . that no proceedings may be had against . . . [the now unrepresented party,] no judgment or order or other step in the action taken, until he appoints an attorney, unless the prescribed notice be first given.'" (*Id.* at p. 742, italics omitted.)

Carolina contends that applying the holding of *Aldridge* compels us to find that all orders entered by the trial court after Madden's December 2019 suspension are void because plaintiffs did not give Carolina written notice that Madden was suspended in December 2019. We disagree. The *Aldrich* court concluded that the dismissal order in that case was void because the trial court acted in excess of its jurisdiction, not without jurisdiction. (*Aldrich*, *supra*, 170 Cal.App.3d at p. 743.) Relatedly, the court

27

acknowledged that a party can waive the protections of section 286. (*Id.* at p. 742.) Because the "obvious purpose of section 286 is to provide for notice to a party who might otherwise be taken unawares," courts uniformly hold that the notice provisions of section 286 may be waived. (*California Water Service Co. v. Edward Sidebotham & Son* (1964) 224 Cal.App.2d 715, 736 (*California Water*); see also *Gion v. Stroud* (1961) 191 Cal.App.2d 277, 280; *Raps v. Raps* (1942) 20 Cal.2d 382, 386.)

In *Aldrich*, the court found that the plaintiff did not waive his right to notice, citing "uncontroverted" facts, including that the plaintiff was not aware that his counsel had been suspended from practicing law before the dismissal order was entered. (*Aldrich*, *supra*, 170 Cal.App.3d at pp. 741 & 742.) Here, by contrast, the trial court found that Carolina was aware of Madden's suspension and that she waived the protections of section 286, findings we review for substantial evidence. (*California Water*, *supra*, 224 Cal.App.2d at pp. 736–737.) Under this deferential standard, we resolve all conflicts in the evidence in favor of the challenged order and indulge all reasonable inferences in support of the trial court's findings. (*Shneer v. Llaurado* (2015) 242 Cal.App.4th 1276, 1286.)

In the trial court, Carolina argued that section 286 notice was due to her as of August 29, 2019, the date that Madden filed the notices of her first interim suspension. This argument failed because Madden provided Carolina actual notice of her suspension before this date and Carolina took no steps to obtain new counsel. Thereafter, the State Bar stayed and temporarily postponed Madden's suspension until December 1, 2019, and Madden did not give plaintiffs or the court notice of the new suspension date. Instead, she misled plaintiffs' counsel to believe that the State Bar vacated her suspension

when in fact it was only postponed to give defendants more time to retain new counsel.

On appeal, Carolina modifies her argument by focusing on the second State Bar court order subjecting Madden to interim suspension as of December 1, 2019. Despite the fact that Madden did not give notice of this second suspension date to the plaintiffs or the court, there is evidence Wailes discovered the December 2019 suspension date while preparing his supplemental declaration in support of the motion to appoint an arbitrator. Relying on Wailes' supplemental declaration, Carolina now argues that plaintiffs violated section 286 by failing to give written notice of Madden's suspension after December 2019.

Carolina's revised argument fares no better than the unsuccessful argument presented in her trial court motion to vacate. The trial court's finding that Carolina waived her section 286 notice rights is supported by substantial evidence that Carolina knew about Madden's suspension and intentionally did not retain new counsel. On August 21, 2019, Madden gave Carolina formal and informal notice that she had been suspended from practicing law as of July 29, 2019, and that defendants needed to obtain new counsel unless the suspension was vacated. The August 21 email exchange between Madden and Carolina shows that Carolina explicitly rejected the idea of obtaining substitute counsel, opting instead to attempt to delay until Madden was reinstated. There is also evidence that Carolina acted to implement this plan to delay the arbitration. For example, Carolina relied specifically on Madden's suspension and the fact that she was unrepresented as grounds for seeking a last-minute continuance of the arbitration hearing from Judge Kleinberg. In making this argument, Carolina did not contend that she was taken unaware by her attorney's suspension. Instead, she took

29

the position that the arbitration should be postponed indefinitely because she was too busy to either look for new counsel or represent herself.

On appeal, Carolina fails to carry her burden of showing that the trial court's waiver finding is unsupported by substantial evidence. Instead, she makes two flawed arguments about evidence that was before the trial court when it denied her motion to vacate. First, Carolina contends that her knowledge about Madden's July 2019 suspension is irrelevant since that initial suspension was stayed. We disagree; the evidence summarized above shows that Carolina knew about Madden's problems with the State Bar and made the conscious decision not to obtain new counsel. Carolina also contends that the fact Madden did not give plaintiffs (or the superior court) notice that the stay of her suspension was lifted as of December 2019 is evidence that Carolina was equally unaware of Madden's suspension. Again we disagree. The August 2019 email exchange is evidence that Madden's discussions with Carolina about her suspension were qualitatively different from Madden's misleading communications with plaintiff's counsel. Moreover, the record shows that Carolina did know about Madden's suspension before the arbitration began. She refused to participate in a scheduling conference because she was too busy and unrepresented by counsel. And in her written "demand" for a continuance of the arbitration hearing, Carolina acknowledged knowing that Madden was incarcerated on October 26, 2019, and that Madden's interim suspension went into effect on December 1, 2019.

Carolina also contends that Madden admitted she did not give Carolina timely notice of the December 2019 suspension. As support for this argument, Carolina cites the notification that Madden filed in the superior court on March 24, 2021, regarding her status with the State Bar and the

possibility that she was still listed as counsel of record for the defendants. In the document Madden did not state or intimate that she failed to give Carolina timely notice of her December 1, 2019, suspension. Madden did disclose, however, that in the fall of 2020, she filed another petition in the State Bar court to vacate or stay her suspension because she wanted to represent Carolina at the October 2020 arbitration, and that Carolina provided a declaration in support of that petition. This evidence of ongoing contact between Madden and Carolina further undermines Carolina's appellate argument that she was caught unaware by Madden's suspension.[8]

Finally, Carolina argues that the trial court's waiver finding cannot be sustained because there is no evidence establishing when Carolina actually learned about the December 2019 suspension. We disagree with this argument, which ignores our substantial evidence standard of review. In any event, the record clearly shows that by the time plaintiffs filed their petition to confirm the arbitral award on December 28, 2020, three months had passed since Carolina expressly acknowledged Madden's December 1, 2019 suspension to Judge Kleinberg, and yet she chose not to hire a new lawyer or herself file a response raising section 286 as a defense to confirmation of the arbitral award. On these facts we find no error in the trial court's determination that Carolina waived the protection of section 286 by not raising it before she belatedly filed a motion to vacate.

---

[8] Respondents request judicial notice of the declaration Carolina filed in support of Madden's request for another stay of her suspension. In her declaration, Carolina stated: "Ms. Madden very effectively represented us and advised us of her conviction, her appeal and her suspension. We were aware also of her custody . . ." This declaration was not before the trial court when it ruled that Carolina waived the protections of section 286, and for this reason, respondents' request for judicial notice is denied.

# DISPOSITION

The judgment is affirmed.  Costs are awarded to respondents.

TUCHER, P.J.


WE CONCUR:

FUJISAKI, J.
RODRÍGUEZ, J.

*Bagnarol et al. v. Bagnarol* (A163703)